## KNIGHT v. KNIGHT.

31 451
82 464
31 451
90 366
99 104
99 250
99 395
31 451
f130 355

1. **Divorce: CRUEL TREATMENT.** A wife is not entitled to a divorce on the ground of cruel treatment, when such treatment appears to have been of such a character, and under such circumstances, as to furnish her no reasonable ground to apprehend physical danger by a continuance of the married relation.

2. —— MISCONDUCT OF COMPLAINANT. So, if the treatment complained of is the result of the complainant's own misconduct, it will furnish her no sufficient ground for a divorce. MILLER, J., dissenting.

*Appeal from Polk District Court.*

WEDNESDAY, JUNE 7.

ACTION for divorce upon the alleged ground of cruel and inhuman treatment endangering plaintiff's life. Trial by

the court.    Petition dismissed.    Plaintiff appeals.    The facts are stated in the opinion.

*Polk & Hubbell* and *Nourse & Kauffman* for the appellant.

*Barcroft & Gatch* and *Withrow & Wright* for the appellee.

DAY, Ch. J. — I.  Appellee insists that this cause is re viewable here only upon errors of law, regularly assigned, and that it is not, as a first method chancery cause, triable *de novo*.  Citing Rev. 1860, §§ 2999 and 3000; *Coe* v. *Winters*, 15 Iowa, 482; *Barney* v. *McCarty*, id. 510; *Docterman* v. *Webster*, id. 522; *Carleton* v. *Byington*, 17 id 579; *Cole* v. *Cole*, 23 id. 439.

1. DIVORCE: cruel treatment.

Appellant insists that any attempt upon the part of the legislature to deprive the supreme court of the power to review anew upon appeal all chancery causes, is in violation of section 4, article 5 of the constitution.

All the evidence is before us, and the cause has been fully and exhaustively argued upon the facts.  A majority of the court find no difficulty in sustaining the action of the court below, and would resolve the question as an original one, the same way.

Hence it has seemed more satisfactory to us to waive a consideration of the question as to the manner of review, and to dispose of the case upon its merits.  The evidence is very voluminous, the abstract covering 160 pages of closely printed matter.  It is impracticable, within the appropriate limits of an opinion, to do more than collate the leading facts which it seems to establish.

The parties were married on the 15th day of May, 1866, the plaintiff being about eighteen years of age, and the defendant her senior by several years.  The plaintiff seems to possess a temper readily aroused, a will which *never*

yields, and a caustic wit ever furnishing a keen retort, which she makes no effort to restrain. The defendant's mental constitution seems not to be the best adapted to these peculiarities of the plaintiff. As might be expected the history of their wedded life presents a picture of alternate lights and shades and evinces the most passionate fondness interspersed with seasons of coldness and distrust. About the 7th of November, 1869, and subsequently thereto, occurred the transactions which are made the immediate grounds of this application. The defendant was absent in the east from the last day of August to the 7th day of November. During his absence the plaintiff occupied a room in her father's house, her sister Mary sleeping in a separate bed in the same room. Previous to his return the defendant had been expected home every Saturday or Wednesday night for two or three weeks. On the Saturday evening previous to his return plaintiff directed her sister Mary to occupy the bed with her, and, if defendant came home in the night, to have him take the other bed, and not wake plaintiff till morning. This conduct the plaintiff excuses upon the ground of feeble health; and that when waked in the night she was thrown into violent paroxysms of coughing. During his absence the defendant was in receipt of frequent letters, all speaking of improved health, and one of them detailing a moonlight romp, exhibiting an exuberance of spirits rarely possessed by one who is a great invalid. The defendant returned about two o'clock Sunday morning, and was received with indifference, and treated coldly the next day. Returning to the house on Sunday evening, after a temporary absence, he found the plaintiff in the parlor talking with one McCauley. Plaintiff well knew that her husband very much disliked McCauley, and regarded him as an immoral man. On several occasions he had told her that McCauley was not a fit person for her to associate with. Still she continued interested in his company, received presents from

him, and presented him a watch-guard made of her hair.
The defendant, upon entering the room, passed the con-
ventional compliments with McCauley, and directly retired,
followed by plaintiff, who suggested that he build a fire at
the cottage, a dwelling in the same inclosure, but a short
way distant, and that he go there to sleep. Defendant,
having built the fire, returned and engaged in conversation
with his wife, when she informed him that she retired at
seven o'clock and suggested that he should do the same.
Defendant went to the cottage, returned in about ten
minutes, found his wife not yet retired, and said he did not
think she intended to go to bed, that she intended to go
into the parlor, to which she replied that she had not
thought of that, but would do just as she pleased. Again
returning in about half an hour defendant found plaintiff
in the parlor with her sister Mary and McCauley. Plain-
tiff testifies that she was partly undressed, had her hair
down and shoes off, preparatory to going to bed, when
defendant first returned, and that she went into the parlor
because he told her she should not. Upon defendant's re-
turn an altercation ensued, which is differently detailed by
the respective parties, and which was succeeded by a sea-
son of mutual estrangement. On Tuesday morning fol-
lowing the defendant handed the plaintiff a letter which
figures largely in this case. In this letter he makes the
most passionate declarations of affection, deplores deeply
the unhappy life they had led, complains bitterly of the
plaintiff's deception and mistreatment, and assures her
that there is now no alternative but their separation, and
that this decision is final. Immediately upon the receipt
of this letter the plaintiff took counsel with reference to
the procuring of a divorce; but this difficulty was adjusted
and on the Thursday following, November 11th, they went
to live together at the cottage, plaintiff still refusing, how-
ever, to occupy a bed with the defendant. The parties
thus lived, not very happily together, until some time in

January, when occurred one of the specific acts alleged in the petition as a ground for the relief prayed. The transaction is very differently narrated by the parties, doubtless receiving from each the particular coloring which interest and prejudice would so likely produce; and the truth, probably, lies between the two statements. It appears that, from whatever motive actuated, the defendant attempted to place the plaintiff in bed; that she got upon the floor, placed her arm through the rung of a chair, and struggled so fiercely that defendant desisted from his attempt. In the struggle the plaintiff's arm was bruised. Plaintiff testifies that defendant used toward her opprobrious epithets and profanity. This the defendant denies.

The remaining difficulty specified in the petition occurred on the 25th of January. Defendant expressed surprise that a person named should have been permitted to visit plaintiff. Plaintiff said the person referred to was as good as defendant. Defendant avowed his purpose to compel plaintiff to retract the statement, and seized her hands for that purpose. Plaintiff testifies that upon this occasion defendant struck her in the face, back, shoulders and chest. All of this defendant denies. Many circumstances were proved, showing the unpleasant relations of the parties. That the evidence discloses a degree of domestic infelicity very much to be deprecated, we freely admit. That it justifies a divorce, however, upon the ground of cruelty, we do not believe.

In this class of cases precedents can do little more than inform the understanding and assist the judgment. Every case must very largely depend upon its own peculiar circumstances, and the character, habits, and disposition of the parties.

Facts which, under certain circumstances, would be sufficient, would, under others, be altogether insufficient. The gentle, fragile, submissive woman, might be entitled to a

divorce for causes which would scarcely furnish the amazon just cause of complaint.

The cruelty justifying a divorce is defined to be such conduct in one of the married parties as renders further cohabitation dangerous to the physical safety of the other, or creates in the other such reasonable apprehension of bodily harm as materially to interfere with marital duty. 1 Bishop on Marr. and Div. (4th ed.), § 715. Courts are admonished, in view of the rapidly increasing tendency to divorces in the present day, and the corresponding weakening of the marital tie, fraught with the most dangerous consequences to social order, that divorces should not be decreed except for " grave and weighty causes." Society has an interest in the permanency and stability of the marriage relation ; and as individuals, in entering into the social compact, have been required to yield many personal rights for the general good, so many married couples, for the good of their common offspring, the conservation of social order, and the maintenance of general morality, must bear with patience and composure the occasional disquietudes growing out of inharmonious tempers and dispositions. " Mere turbulence of temper, petulance of manner, infirmity of body or mind are not numbered among these (grave and weighty) causes. When they occur their effects are to be subdued by management if possible, or submitted to with patience ; for the engagement was to take *for better, for worse ;* and painful as the performance of this duty may be, painful as it certainly is in many instances which exhibit a great deal of the misery that clouds human life, it must be attempted to be sweetened by the consciousness of its being a duty, and a duty of the very first class of importance. And it is not every slight touching of the wife by the husband, even in anger, which will justify a divorce." 1 Bishop on Marr. and Div. (4th ed.), § 743, and cases cited. In the case of *Banere* v. *Banere*, 4 Johns. Ch. 187, Chancellor KENT

holds this language: "Though a personal assault and battery, or a just apprehension of bodily hurt, may be a ground for this species of divorce, yet it must be obvious to every man of reflection that much caution and discrimination ought to be used on this subject. The slightest, assault or touch in anger would not surely, in ordinary cases, justify such a grave and momentous decision." Pothier says, "that a blow or stroke of the hand would not be a cause for separation under all circumstances, unless it was often repeated." In this class of cases the court interferes, not so much to punish an offense already committed as to prevent the commission of one; to shield the complaining party from the repetition of wrongs done, or the infliction of those threatened. We regard it unnecessary to multiply authorities, which might be cited *ad libitum*, in support of the views here expressed. The burden of proof rests upon the plaintiff to establish the allegations in her petition. The principal occurrences relied upon are positively denied by the defendant, both in the answer and in his testimony. As to these transactions the plaintiff is without corroboration. It is quite obvious that her narrative, through the influence of feeling and interest, must be very highly colored. And she does not testify that the blows of defendant were inflicted with force, or that they occasioned any personal injury. It is quite probable that they were attended with no other consequences than wounded feelings.

From the plaintiff's own statement of the occurrences, taking into consideration her indomitable will, and her ever readiness to resent the slightest encroachment upon the domain of her rights, we cannot find, as a fact, that the conduct of the defendant has furnished her reasonable ground to apprehend physical danger in the further continuance of her cohabitation with him.

II. Another reason why the plaintiff is not entitled to the relief asked is found in the fact that her own con-

Knight v. Knight.

duct, in our opinion, brought upon her all the ill treatment of which she complains. We have not a particle of doubt that if she had justly appreciated the responsibilities and duties of her position, had properly regarded the feelings of her husband, had restrained her pride and guarded her temper, she might have remained one among the most honored and the most cherished of wives. While we do not approve or justify the conduct of the defendant, yet we must allow that it finds much to palliate and excuse it in the conduct of plaintiff. "Men are not angels," human nature is not perfect, and the court which administers law upon the theory of its perfection will come very far short of meeting the practical wants of life. We forbear an enumeration of the various causes of complaint which the defendant might truthfully urge against the plaintiff. Some of them have already been incidentally noticed. Though not inconsistent with purity of purpose, they evince a disregard of the obligations due from one member of the martial relation to the other, such as, it is to be hoped, but few examples of are furnished in the married state.

*2.—misconduct of complainant.*

"If what is complained of as cruelty is the result of the complainant's own misconduct, it will not furnish ground for the proceeding. The remedy is in her own power; she has only to change her conduct; otherwise the wife would have nothing to do but misconduct herself, provoke the ill treatment and then complain." 1 Bishop on Marr. and Div. (4th ed.), § 764. The evidence discloses no effort at reformation here; evinces no purpose on the part of plaintiff to render the position of her husband pleasant or even endurable.

The petition of plaintiff was properly dismissed.

Affirmed.

MILLER, J. — While I concur in the affirmance of the judgment of the district court, I cannot assent to do so

Knight v. Knight.

upon the grounds stated in the opinion of the chief justice.

Under the numerous decisions of this court, holding that equity causes, triable by the second method, are reviewable on appeal only upon the legal errors as in cases triable by ordinary actions at law, and that where the evidence is conflicting, the apellate court will not disturb the verdict of a jury or the finding of the court on questions of fact, I can agree to affirm the judgment in this case, because the conflicting state of the evidence is such as that, under our former decisions, we would not be warranted in disturbing the finding and judgment. But I cannot agree with the majority that, if the case were before us for trial *de novo*, the evidence is insufficient to entitle the plaintiff to a divorce for the cause averred in her petition. Nor can I give my consent to the doctrine recognized in the majority opinion, that "a wife is not entitled to be divorced on the ground of ill-treatment received from her husband, if that ill-treatment has been drawn upon her by her misconduct." I know that there are cases sustaining this proposition, but they belong to a barbarous age, and were dictated by a spirit of tyrrany and unmanliness.

That the plaintiff was not entirely blameless is undoubtedly true, but her faults are no justification or even palliation of the husband's ill-treatment of her; nor should she be denied all remedy for such ill-treatment because she has not been at all times an *humble* and *submissive* wife. "Two wrongs will not make one right," as was said by Chancellor WALWORTH, in *Perry* v. *Perry*, 2 Paige, 503. "The moral sense of the community, in our present state of civilization, will not permit the husband to inflict personal chastisement on the wife, even for the grossest outrage." The old common-law rule upon this subject grew up when the wife was the slave of the husband, but an advanced and humane civilization has long since freed her from this slavery, and destroyed the despotic power of the

husband, and no vestige of it should be longer recognized by the courts over her. In my judgment, the wife's right to a divorce for ill-treatment by the husband ought to be determined upon the character of such ill-treatment, whether it has been such as to seriously endanger her life or health, without reference to whether she has been at all times an humble and submissive wife, or at times has been ill-tempered or willful. No provocation, in my opinion, will justify a man in cruel and inhuman treatment of his wife, or deprive her of her right to be divorced, if his treatment of her is such as is contemplated by the statute as a ground for divorce.