MARIA C. OLSON, Appellee, v. WILLIAM OLSON, Appellant.

**Divorce:** CRUEL AND INHUMAN TREATMENT: EVIDENCE. A petition
for divorce on the ground of cruel and inhuman treatment is
not supported by proof of acts which in no manner endanger
the health or life of the plaintiff, but show simply incompata-
bility of temper. Evidence held insufficient to establish cruel
an inhuman treatment.

*Appeal from Buena Vista District Court.*— HON. W. B.
QUARTON, Judge.

THURSDAY, APRIL 5, 1906.

ACTION for a divorce. Decree dissolving the matri-
monial bonds, and defendant appeals.— *Reversed.*

*J. E. Buland* and *F. F. Faville,* for appellant.

*Mack & De Land* and *H. F. Schultz,* for appellee.

DEEMER, J.— A decree of divorce is sought by plaintiff
on account of the alleged cruel and inhuman treatment by
defendant, her husband, which treatment it is claimed en-
dangered plaintiff's life and health. The treatment com-
plained of is said to have been the use of vile and indecent
names, threats to kill, and an unlawful assault by defend-
ant, some time in May of the year 1904. Regarding the
use of indecent, vile, and threatening language, the testimony
is not sufficient whereon to base a decree for plaintiff. Her
testimony refers to the use of vile names on two occasions;
but in this she is uncorroborated, and her testimony is ex-
plicitly denied by defendant. As to threats. Of those re-
lied upon, the first to which reference is made did not relate
to plaintiff, but to an adult son by a former marriage; and
the second, while it may have related to plaintiff, was not
such as to entitle her to a divorce. At most, it was nothing

more than a threat " to fix " her, which, under all the cir-circumstances, did not rise to sufficient dignity to be a menace to plaintiff's life or health. There is testimony to the effect. that defendant at one time called plaintiff a d—d liar; but this is not relied upon by her as endangering either health or life. Indeed there is some ground for believing that part of the appellation was true.

The main incident relied upon happened a few months before the bringing of this suit. It seems that defendant had gathered up and placed in his buggy a lot of empty bot-tles and cans which he was proposing to take to the " dump grounds." Plaintiff appeared while defendant was getting his horse ready to hitch to the buggy and she insisted that the bottles and cans be thrown into the alley, and was mov-ing toward the buggy with spade in hand in order to carry out her desires. Defendant took her by the arms, and forced her into the buggy shed, closing the door upon her. She escaped from this shed, and defendant then pushed her into the barn or stable, where she secured a pitch fork. Discretion on his part proving the better part of valor, he retired from the stable, and again closed the door upon her, and as we understand asserted his headship of the family by having his own way as to the disposition of the bottles and cans. There is some testimony tending to show that during the melée, defendant threw plaintiff to the ground, but no evidence that he used any more force than was neces-sary to cause plaintiff to desist from her efforts to remove the refuse material from the buggy. Plaintiff's arms were somewhat brused and blackened as a result of the contest, but her life was at no time seriously in danger. She claims that at another time, defendant struck her while he was intoxicated, but in this she is entirely uncorroborated; and defendant squarely denies the assault. The testimony shows that plaintiff is of a quarrelsome disposition, that she has had a part in and so far as possible held her own in all her difficulties with her husband. Both she and her husband

had had experience on the matrimonial sea before assuming their present relations, and in the storms they have experienced since becoming husband and wife each seems to have had a part. Neither has been faultless; and, while we do not of course approve defendant's conduct, much is shown to palliate and excuse it. Plaintiff has an adult son, with whom defendant has had trouble, and it may be that his influence has had much to do with the situation as it now exists. Most of plaintiff's troubles have been of her own creation, and the remedy, therefore, is not through the divorce court, but in change of conduct and demeanor toward her husband. In him, too, there is room for improvement. A little patience, a spirit of forgiveness, and a measure of toleration for the frailties of human nature will do more for these parties than a decree of divorce.

Incompatibility of temper is no ground for divorce; and, while we may not compel husband and wife to live together, we can at least make it so difficult to obtain a divorce as to encourage another effort at observance of the matrimonial vows. Much of the testimony offered was from incompetent witnesses. That is to say, they were small children, and it was not shown that they knew the nature of an oath. The case does not involve any doubtful propositions of law. But, if support be needed for our conclusions, it will be found in *Sylvester v. Sylvester*, 109 Iowa, 40; *Wells v. Wells*, 116 Iowa, 59; *Owen v. Owen*, 90 Iowa, 365; *Knight v Knight*, 31 Iowa, 451; *Blair v. Blair*, 106 Iowa, 269.

For the reasons pointed out, the decree must be reversed, and the cause remanded for one in harmony with this opinion.— *Reversed* and *remanded*.