MARGARET LAYTON, Appellant, v. ATHULBERT LAYTON, Appellee.

A divorce will not be granted on a charge of cruel and inhuman treatment, upon a showing merely of facts amounting to incompatibility of temperament. The treatment complained of must be such as to endanger the life of plaintiff. Evidence held insufficient to authorize a divorce.

*Appeal from Chickasaw District Court.*—HON. A. N. HOBSON,
Judge.

THURSDAY, MAY 14, 1914.

ACTION for divorce.—*Affirmed.*

*Clary & Condon* and *J. A. Yarger,* for appellant.

*M. E. Geiser,* for appellee.

GAYNOR, J.—Plaintiff and defendant were married De-
cember 13, 1898, and lived together as husband and wife until
August 29, 1911, at which time plaintiff left, and on the 16th
day of September, 1911, filed a petition for divorce. In this
petition, she alleges that for about two years prior to the com-
mencement of the action defendant had been guilty of cruel
and inhuman treatment, endangering her life.

It appears that during all their married life they lived
together on a farm in Chickasaw county; that six children
were born to them, four of whom were living at the time this
action was tried. The eldest is a girl twelve years of age, and
the youngest also a girl, one year old. Three of the children
are now living with the plaintiff, and one with the defendant.

The evidence tended to show but one act of physical
violence on the part of the defendant. This occurred some
time in June, 1911. It appears to have arisen in this way.
The defendant was punishing the eldest girl. The plaintiff
interfered. The manner in which she interfered is in dispute.
That she interfered in some way is not in controversy. She
claims the defendant struck her, and threw her out doors, and
locked the door upon her. The defendant claims he was pun-
ishing the girl because she had cut her sister's hair in a man-
ner that gave her a very grotesque appearance. Plaintiff
claims that he was punishing the girl because she had not
done chores. The plaintiff was not seriously hurt in this

mêlée, though it does appear that she had some black and blue marks on her arm afterwards. She remained at the defendant's house until the 29th day of August.

Defendant claims she assaulted him with a knife; that whatever injury she received was occasioned by his effort to disarm her. He does not deny that he put her out of the door and closed the door and finished punishing the child. There is controversy as to the severity of the punishment administered to the child, though it does appear that the child was not physically injured.

Soon after the plaintiff's marriage with the defendant, within about a year or so, she left him, and was gone some time. There is controversy as to the cause of her leaving. It appears, however, that she did not communicate to the defendant the fact that she was about to leave, but left, and claimed that it was due to his abuse, or, as she claims in one part of her testimony, she desired her child to have treatment. However that may be, the necessity of her leaving is not made evident in this record. She was gone but a short time, and returned and continued to live with the defendant until March, 1911, at which time she left again, and, on the solicitation of the defendant, returned. It appears that she had visited a lawyer in the meantime, and was advised to return to her husband's home. The purpose of this visit is not made plain. She denies that she consulted him with reference to a divorce. That she consulted him and was advised to return home was made plain. On the June following the trouble over the child occurred.

She claims also that the defendant required her to work outdoors, besides doing her household work; that she was physically unable to do this. She stated further that he often called her a liar, and applied other improper epithets to her. This is in controversy. The evidence tends to show that he is not a profane man. She complains also of neglect, in that he would not take her to visit her mother and other places where she desired to go, but she does not seem to have suffered from

this. Indeed it does not appear that she made serious complaint; nor does the record make plain that at the time he refused to take her, that the conditions were such that he could then leave his work for that purpose. Out of this plaintiff seems to have developed an attitude of mental hostility to the defendant, quiet, uncomplaining, but made manifest in little ways.

Misunderstandings in the home arise most frequently from lack of candor; the silent, but watchful, noting of a fault; the impatient gesture, and the disapproving look, more damning than the spoken word. "If Enid errs, let Enid know her fault." The marital relation demands the utmost frankness and good faith on the part of both. Each should be a watchful waiter at the helm. "Alas, how slight a cause will move dissension between hearts that love."

However painful and disagreeable a continuation of this marital life may be to the plaintiff, we do not find any avenue of escape for her through the courts. These people have entered into a solemn compact. Into their lives have come the lives of others. Little children need the home and home influence to develop in them those traits of character which make good citizens. These parties are not only legally bound to that end, but morally and religiously so. They cannot be permitted to escape these obligations and duties because they are distasteful, because of incompatibility of temper, because the yoke has become burdensome and heavy to be borne. As these obligations should not be lightly entered into, neither should they be lightly set aside. To entitle either to a decree of divorce, a showing must be made that satisfies the requirements of the statute. The parties cannot divorce themselves, and the courts cannot divorce them, except for legal cause. Incompatibility of temper is not one of the grounds for divorce in this state, nor does the plaintiff base her right to a divorce on that ground. She charged the defendant with cruel and inhuman treatment endangering her life. This claim a careful reading of the record does not sustain.

There is, no doubt, room for improvement on the part of each. The plaintiff is not wholly without fault, and we are inclined to think that much of the trouble of which she now complains could have been avoided by a little more frankness, a little more patience, a little more of the spirit of forgiveness, a little fuller recognition of the frailties of human nature, and a little more candor in her intercourse with her husband.

This court has denied divorces on a much stronger showing than has been made in this case. See *Wells v. Wells*, 116 Iowa, 59; *Sylvester v. Sylvester*, 109 Iowa, 401; *Blair v. Blair*, 106 Iowa, 269; *Olson v. Olson*, 130 Iowa, 353.

We find no error in the court's refusal to grant a decree of divorce in this case, and the cause is—*Affirmed*.

LADD, C. J., and DEEMER and WITHROW, JJ., concur.