Dora Veeder, Appellant, v. Fred C. Veeder, Appellee.

**DIVORCE:** Impossibility of Obtaining Corroboration. Corroboration of the truth of the assigned ground for divorce must be produced, even though, from the very nature of the wrongful act, it may be practically impossible to obtain such corroboration. So held as to a charge of excessive sexual indulgence.

**DIVORCE:** Untrue but Justifiable Accusations. Accusations of misconduct which are untrue in fact, but made in good faith and in the reasonable belief of their truth, are not grounds for divorce, even though accompanied by a measure of abuse and threats prompted by such justifiable belief.

**DIVORCE:** Bad Faith in Consummating Marriage—Effect. Entering into the marriage relation in bad faith, and with ulterior motives, may present a very persuasive reason why such person should be denied a decree of divorce.

**DIVORCE:** Bad Faith of Wife as Grounds. One party to a marriage may not have a divorce on the sole ground that the other party entered into the relation in bad faith, and with ulterior purpose of obtaining the property of the applicant for divorce.

**DIVORCE:** Nonproof of Loss of Health. Proving grounds for divorce without proving that health or life has been endangered thereby, presents a total failure of proof.

*Appeal from Wright District Court.*—R. M. Wright, Judge.

OCTOBER 2, 1920.

PLAINTIFF sought and was denied a divorce. Defendant filed cross-petition, and thereupon obtained divorce. Plaintiff appeals both from the denial of a divorce to her and the

granting of one to defendant.—*Affirmed on plaintiff's appeal; reversed on defendant's appeal.* .

*Berry & Hill,* for appellant.

*Healy & Thomas* and *Ladd & Rogers,* for appellee.

SALINGER, J.—I. One charge is that the excessive sexual demands of the husband constituted cruel and inhuman treatment. We may assume that such demands may be such treatment. We may assume that the testimony of the plaintiff shows such treatment. But a most careful reading of the record fails to disclose any corroboration. We recognize that, in the very nature of things, corroborative evidence supporting such an accusation is difficult to obtain. But that, of course, will not change the statute. Upon that charge or any others there may not be a decree of divorce without corroboration. That the corroborative evidence may be difficult to obtain is the misfortune of plaintiff, which, however, cannot repeal the statute. Indeed, it may not be amiss to add that there was at least one occasion when corroborative testimony in some degree could have been obtained, and would naturally have been obtained, and yet was not gotten. Plaintiff testifies that, on one occasion, she was driven from her bed by the conduct of the defendant, and sought refuge with a nurse, sleeping in another room. It would have been most natural to make some declaration as to the alleged cause for coming into this room and retiring there with the nurse, and not wholly unnatural to at least intimate the reason now asserted for it. But not a suggestion of the sort, which might possibly have been admissible as *res gestae,* was made. On the contrary, the explanation given was that she was disturbed by the snoring of one of the children, sleeping in the room of herself and husband, because of pressure of company. This charge fails for lack of corroboration.

II. Appellee contends that the sole basis of plaintiff's

1. DIVORCE: impossibility. of obtaining corroboration.

application for a decree of divorce is cruel and inhuman treatment, worked by alleged excessive demands on part of defendant. We do not so read the petition.

**2. DIVORCE: untrue but justifiable accusations.** Such treatment is further claimed to have been suffered because, at the time when plaintiff was away from the home of defendant, and pregnant, and she became ill with chills and fever, and was confined to her bed at the home of her parents, that, on the forenoon of a given day, defendant came there, and, while plaintiff was confined in bed, as aforesaid, he cursed and abused her, threatened and accused her of committing an abortion, called her a murderer and destroyer of a child, and threatened her with prosecution for murder. She further alleges that the aforesaid abuse and threats caused her much pain and suffering; that she became very weak and nervous; that, during the afternoon of that day, she suffered a miscarriage, effected by said abuse, cursing, and threats; and that the miscarriage caused her much pain and suffering, both mentally and physically, and compelled her to obtain medical treatment; that she was confined to her bed for several days; that the defendant repeated his visit, while the plaintiff was still confined in bed, and again called her a murderer, a destroyer of a child, and threatened to prosecute her for murder; that said treatment caused her a relapse, and to suffer much pain, mentally and physically, to such an extent that it actually endangered her life.

The testimony shows the alleged conduct, and there is corroboration. But the record satisfies us that, even if the accusations were, in fact, unfounded, the husband had reasonable ground for believing them to be true. Their making under excitement and agitation caused by that belief does not constitute the cruel treatment that will base a divorce. No case has gone beyond treating certain accusations made without belief in their truth or wantonly, as such cruelty.

2-a

The appellee urges that the marriage of the plaintiff to

him was the result of a conspiracy on her part to obtain his property; that she entered into marriage while telling others that she was filled with hate of the defendant; and that this fact has large bearing in sustaining the court in having granted a decree of divorce to defendant on his cross-petition. The appellant responds that this alleged mental attitude on the part of the wife is immaterial and irrelevant, if it were conceded that the evidence proves the existence of such an attitude. So far as the petitior of the plaintiff is concerned, it is *not* immaterial that she failed to enter the marriage relation in good faith, and was actuated by ulterior and improper motives only. A court of equity might well deny relief to a suitor seeking a divorce, because it found he did not enter the court with clean hands. See *Chapman v. Chapman,* 181 Iowa 801. But we dispose of this point with the holding that the evidence fails to establish the charged conspiracy and conduct.

3. DIVORCE:
bad faith in
consummat-
ing marriage:
effect.

For reasons stated, we sustain the denial of divorce to the wife.

III. On the cross-petition, however, this point is to be viewed from a different angle. That a woman who married merely to get property, and while hating her husband, might, therefore, be denied a divorce sought by her, does not establish that the husband may obtain a divorce because the relation was entered into by the wife in that spirit.

4. DIVORCE:
bad faith of
wife as
grounds.

A defense to her application is one thing. Affirmative support of his application is quite another. When it comes to the question of whether he was entitled to a divorce, he must prove statute grounds. Such attitude of the wife or husband is not made one of the causes for divorce. It follows that, so far as the decree entered on the cross-petition is concerned, the alleged conspiracy is immaterial, were it proved.

IV. Did the court fall into error in sustaining the cross-petition? This petition, too, is, aside from said conspiracy, based on the charge of cruel and inhuman treat-

ment, such as to endanger the health and
life of the defendant husband. The speci-
fications are that, during the month of
August, 1916, plaintiff (the wife) ascertained
herself to be pregnant, and immediately insisted upon a
criminal operation; that defendant refused his consent, and
warned different doctors in the neighborhood of this inten-
tion on the part of the plaintiff, and advised her not to be
guilty of such an act; that thereupon, and about the middle
of August, 1916, plaintiff left his home, and shortly there-
after caused an abortion to be performed on herself, and
thereafter became very sick, at the home of her parents;
that she had stated, prior to the act, that she would cause
same to be done, and would never bear a child to defendant;
said that she despised, hated, and loathed him, and had no
intention to act as a wife to him; that, after the act had
been, in fact, performed, she stated that she had procured it
to be done, and was glad of it, and had no intention of
bearing a child to defendant; that he had protested against
her declared intentions, and made every effort in his power
to prevent same; that he did not know it had actually been
performed until sometime thereafter, and is unable to state
by whom it was, in fact, performed.

It proves unnecessary for us to decide whether this
charge is established. For, assuming that it is, the cross-
petitioner has utterly failed to establish the vital allegation
that said conduct has endangered his health or life. He
pleads that, "as a result of the conduct of the plaintiff, as
hereinbefore set forth, the defendant has become seriously
sick physically; that he has been advised by his physician
that his heart condition is dangerous, and has been brought
about by worry, excitement, and trouble," and he pleads
further that he should not be required to longer live with or
support the plaintiff herein.

True, his counsel states in argument that, after the abor-
tion, the husband was sick and in poor health, as a result
of his grief and sorrow; that his health was broken and his
life endangered, as a result of grief and worry because of

*5. Divorce: nonproof of loss of health.*

plaintiff's conduct. But, of course, we must be governed by the evidence, rather than counsel's deductions from it; and, in considering the evidence, we must note, too, the rule that what will be deemed sufficient impairment of the health of the wife will not always be deemed sufficient as to the husband. See *Moir v. Moir*, 182 Iowa 370.

The wife raises squarely that decree on the cross-petition was erroneously entered because there was no proof that the alleged conduct of the wife had endangered the health or life of the husband. What is the evidence? A son of the defendant's stated as a witness that "lately" the father had not been able to work in the field, because he was sick; but he makes no statement as to what the ailment was, or how serious or otherwise it was.

·The defendant weighed, at the time of trial, about 240 pounds. Another son of his testifies the father had grown heavier and much fleshier, within the last year or two. Nellie Pierce, a nurse in attendance in the house, had it suggested to her by a question that defendant appeared like a man that wasn't in good health, and answered, "I didn't notice that at all." Being asked whether she did not notice that he would go to sleep as soon as he would lie or sit down, she answered, "Well, I think this was only natural; he was up a good deal at night." This would seem to be literally all the evidence that the alleged conduct of the wife caused a physical and mental condition, or both, that endangered the life or health of the husband. It clearly does not establish what is claimed for it. We are well satisfied the evidence fails on this point. Waiving all other questions, then, it seems manifest that it was error to grant the husband a divorce on his cross-petition. See· *Welch v. Jugenheimer*, 56 Iowa 11.

On the appeal of the plaintiff, the decree denying her a divorce must be affirmed. The decree granting the husband divorce must be reversed.—*Affirmed on appeal of plaintiff; reversed on appeal of defendant.*

LADD, PRESTON, and STEVENS, JJ., concur.