C. J. YETLEY, Appellee, v. MARY YETLEY, Appellant.

**DIVORCE:** Grounds—Acts Not Endangering Life. Acts and conduct, howsoever annoying, do not constitute cruel and inhuman treatment unless they "endanger the life" of complainant.

*Appeal from Marshall District Court.*—JAMES W. WILLETT, Judge.

JUNE 22, 1923.

ACTION for divorce on the grounds of cruel and inhuman treatment. A decree was entered for the plaintiff, and defendant appeals.—*Reversed.*

*C. H. E. Boardman* and *F. M. Haradon,* for appellant.

*F. E. Northup* and *E. N. Farber,* for appellee.

FAVILLE, J.—Plaintiff and defendant were married May 1, 1913. At that time, plaintiff was a widower, with adult children, and the defendant had also been previously married. At the time of the trial, the plaintiff was 83 years of age, and the defendant was 66. They had been acquainted with each other two or three years before the marriage. The petition for divorce was filed August 12, 1919, and answer was filed March 24, 1921. Decree was entered in September, 1921. For about a year after the petition was filed, the parties continued to live together in the same house, the plaintiff paying all the bills, and without any substantial change in the relation between the parties.

A few days before the marriage, to wit, April 19, 1913, the plaintiff made a trust deed to his children of a farm of 277 acres in Marshall County, reserving therein a life estate to himself. He owns other real estate, of the value of approximately $10,000, and personal property alleged to be of the value of $3,275. The plaintiff has five adult, married children, and, as might reasonably be expected under the circumstances, they

were opposed to their father's marriage to the defendant, and
have never been reconciled thereto. That they have not en-
couraged amicable relations between the plaintiff and the de-
fendant is, under all of the circumstances, not altogether sur-
prising, nor is it singular that they are the main witnesses for
the plaintiff in the action, and have encouraged the plaintiff to
sue for the divorce.

The plaintiff is quite the inferior of the defendant phys-
ically. He is small in stature, weighs about 130 pounds, is
deaf in one ear and blind in one eye, and altogether not phys-
ically able to cope with the prowess of the defendant, who, it
appears, is in good health, and somewhat Amazonian in physical
development.

The plaintiff specifically alleged in his petition the various
matters and things which he relied upon as constituting cruel
and inhuman treatment sufficient to endanger his life. They
are quite well summed up in his allegation that the married life
"worried and annoyed" him. Undoubtedly it did. He claims
that the defendant complained of the house in which they lived
as being "an old shack," and expressed the hope that it would
burn down; that she complained to the plaintiff about his chil-
dren and of their treatment of her; that she demanded that he
turn his business affairs over to her, and that she manage them;
that she took away Liberty Bonds and other papers belonging
to the plaintiff which he had left at the house, and refused to
tell him where they were. It appeared upon the trial that all
of said papers were in a safety deposit box.

The plaintiff complains that the defendant was a spiritual-
ist, and that she claimed to communicate with spirits by means
of a slate and a trumpet, and that she sometimes took these
instrumentalities to bed with her. Plaintiff admits, however,
that he knew that the defendant was a spiritualist before he
married her.

Plaintiff claims that the defendant placed a bottle contain-
ing gasoline in such a place that the plaintiff mistook the same
for Colfax water, and in attempting to heat it, was injured. It
appears, however, that this was several years before the divorce
action was commenced, and also that there was no purpose on
the part of defendant, in connection with this incident, to injure

the plaintiff. In fact, we are satisfied from the record that the gasoline was placed in the receptacle with the full knowledge of the plaintiff, if not by his express direction.

There was complaint about what the wife did with a basket belonging to plaintiff, with his iron wedges, an army overcoat, and other things. There is also complaint that she had "spells" in the night; that she thought there were burglars in the house; and that, on one or two occasions, she swore at the plaintiff.

Plaintiff is corroborated in some of the matters of which he complains, chiefly by the testimony of his children; while, on the other hand, the defendant denies or explains the matters complained of, and is corroborated by neighbors, who knew the manner of life of the parties.

It would serve no useful purpose to review the evidence *in extenso*. We have examined the entire record with care, and we are persuaded therefrom that the plaintiff has failed to establish such a case of cruel and inhuman treatment as warrants a divorce, under the laws of this state. It is contended by the plaintiff that there can be cruel and inhuman treatment by verbal acts and by a course of conduct that may endanger life and be sufficient justification for a divorce, without there being actual physical violence. We have so held in particular cases.

It is a matter not to be overlooked that our statute has a very important and essential qualification to the provisions which make cruel and inhuman treatment a ground for divorce, and that is that it must be such "as to endanger the life" of the spouse. "Incompatability" is not a ground for divorce in this state, nor can the courts sever the marriage relation because the parties who have entered into it have done so ill-advisedly, and under circumstances and conditions when good judgment and sound sense would have dictated that they should not have done so. Before a court is warranted in granting a decree of divorce on the grounds of cruel and inhuman treatment, the evidence in behalf of the complaining party must be such as to satisfy the court, not only that there has been treatment which could properly be designated as "cruel and inhuman," but that it has been of such a character as to meet the requirements of the statute, and in fact "endanger the life" of the complaining party.

The marriage of these parties may have been a serious mistake on the part of each of them, in the first instance. Each may have been more or less to blame that the venture has not been a happy· one; but they voluntarily chose to undertake the experiment, and the court cannot relieve them from it without a showing of facts sufficient to meet the requirements of the statute. Perhaps a little less of what is sometimes called "nagging" and more of the spirit of tolerance and less disposition to make complaint would be of greater benefit to these parties than a decree of divorce.

We cannot concur in the conclusion of the trial court in this case. We think that the plaintiff failed to establish the allegations of his petition entitling him to a divorce. As bearing upon the conclusion announced, see *Knight v. Knight,* 31 Iowa 451; *Owen v. Owen,* 90 Iowa 365; *Blair v. Blair,* 106 Iowa 269; *Sylvester v. Sylvester,* 109 Iowa 401; *Wells v. Wells,* 116 Iowa 59; *Olson v. Olson,* 130 Iowa 353; *Coffin·v. Coffin,* 155 Iowa 574; *Hall v. Hall,* 162 Iowa 653; *Layton v. Layton,* 166 Iowa 74; *Young v. Young,* 173 Iowa 424; *Chapman v. Chapman,* 181 Iowa 801; *Naumann v. Naumann,* 182 Iowa 420.

The decree appealed from is—*Reversed.*

Preston, C. J., Evans and Arthur, JJ., concur.