LEWIS WHITE, Appellant, v. MARGARET WHITE, Appellee.

**DIVORCE:** Inhuman Treatment—Indispensable Elements. (1) Impairment of health and (2) endangering the life of complainant are indispensable elements of "inhuman treatment," within the meaning of the divorce statutes.

Headnote 1: 19 C. J. pp. 44, 50.

*Appeal from Keokuk District Court.*—D. W. HAMILTON, Judge.

OCTOBER 20, 1925.

ACTION for divorce. The trial court dismissed the plaintiff's petition, and he appeals.—*Affirmed.*

*Willcockson & Willcockson,* for appellant.

*Stockman & Baker* and *C. M. Dutcher,* for appellee.

FAVILLE, C. J.—The parties to this action are each approximately 55 years of age. They were married in 1895. Prior to the marriage, appellee was employed as a domestic in the home of the mother of appellant. After the marriage, the parties lived on different farms until they acquired one of their own, where they still live. Eight children have been born to the marriage, all of whom are living, except a son who died during the late war. The ages of the living children range from 9 to 28 years. Appellant bases his claim for divorce solely on the ground of cruel and inhuman treatment. Appellant weighs about 130 pounds, and appellee about 175 pounds. The marital difficulties originated some 8 or 9 years ago. The record contains a recital of numerous instances of trouble between these parties during that period of time. No useful purpose would be

served by setting out in detail the facts and circumstances surrounding these troubles. We have examined the entire record with care. It appears that neither party has been an active adherent to any religious faith. Appellant's father was a German Lutheran, but appellant has not been a member of any church, nor a regular attendant upon church services. On the other hand, appellee was born in a Catholic family, but we gather from the record that she was not an active communicant of that faith. One serious clash between the parties, however, appears to have been over the matter of the burial of the deceased son who died in service. At the time his body was brought home for burial, a question arose as to whether it should be buried in a Protestant cemetery or in a Catholic cemetery, appellee at that time insisting that the burial should be in the Catholic cemetery. Appellee's wishes prevailed, and the body was buried in the portion of the Catholic cemetery where unbaptized infants and noncommunicants are buried. From that time on, there appear to have been frequent discussions that often materialized into actual quarrels. Appellant made slighting remarks about the Catholic religion and the local priest; while, on the other hand, appellee cast reflections upon the Masonic lodge and appellant as a member thereof. These verbal battles may not improperly be designated to have terminated in "a draw." There is no question but that a spirit of contention and nagging, faultfinding and criticism, took possession of the heads of this household. Appellant was on the school board, and appellee unjustly accused him of intimacy with the school-teacher; while, on the other hand, appellant, while away from home, wrote letters to appellee that were obviously intended for no other purpose than to tantalize and annoy her and to make her jealous. There is evidence that appellee, on one occasion at least, used violence, and struck and beat appellant, who is scarcely her equal in a physical encounter. One trouble between the parties arose over the building of a new house, appellant desiring to build a more modest and inexpensive home than suited the tastes and ambitions of appellee. The result, however, was the construction of a farmhouse of sixteen rooms, constructed substantially in accordance with the wishes of appellee. Some time ago, the parties ceased to occupy the same room, appellant sleeping in what

is referred to as the "northeast room" of the house. Appellant was doubtless a believer in the biblical admonition that "it is better to dwell in the corner of a housetop than with a contentious woman in a wide house." Proverbs 21:9. During all of these difficulties, however, the parties have lived under the same roof, and have eaten at the same table, and appellee has done the housework, including the cooking and the washing, and there is no complaint of the manner in which the same has been done, —in fact, the evidence shows that she has been and is a good housekeeper. We are satisfied from the record that appellee is a woman of quick temper, and was not delicate in the use of language. Appellant is corroborated in his contention that she applied opprobrious epithets to him, some of which unduly reflected upon his maternal ancestor. There may be some excuse for the irritability of appellee because of the period of life through which she was passing. It is unnecessary that we recite the details of the quarrels between these parties, ranging all the way from the matter of feeding corn to young stock and contentions over a mislaid book and some magazines, to accusations of unchastity and infidelity. Appellant contends that, as a result of the treatment he has received from his wife, he has become nervous and sleepless, and that his health has been impaired and his life endangered. We are deeply impressed with the fact that six of the seven living children of these parties were witnesses in behalf of appellant. There is no doubt that this home is an unhappy one, and that appellant and appellee have become estranged and embittered toward each other. Under the laws that govern domestic relations in this commonwealth, divorces cannot be granted for incompatibility, or because the parties to the marriage relation are unable to agree or to dwell together happily. Cruel and inhuman treatment that will justify a court in severing the bonds of matrimony must be of such a character as to not only impair the health but to endanger the life of the complaining party. We are convinced from an examination of the record in this case that the treatment of appellant by appellee does not rise to that character which would justify a court in granting appellant a divorce on the ground that such treatment has impaired his health and endangered his life. We are disposed to concur in the conclusion of the trial

court that appellant failed to establish the allegations of his petition so as to entitle him to a divorce from appellee. No two cases are alike in their facts, but, as bearing somewhat upon our conclusion, see° *Knight v. Knight,* 31 Iowa 451; *Owen v. Owen,* 90 Iowa 365; *Blair v. Blair,* 106 Iowa 269; *Sylvester v. Sylvester,* 109 Iowa 401; *Wells v. Wells,* 116 Iowa 59; *Olson v. Olson,* 130 Iowa 353; *Coffin v. Coffin,* 155 Iowa 574; *Hall v. Hall,* 162 Iowa 653; *Layton v. Layton,* 166 Iowa 74; *Young v. Young,* 173 Iowa 424; *Chapman v. Chapman,* 181 Iowa 801; *Naumann v. Naumann,* 182 Iowa 420; *Yetley v. Yetley,* 196 Iowa 314.

It follows that the decree of the trial court must be, and it is,—*Affirmed.*

EVANS, ALBERT, and MORLING, JJ., concur.