<table>
<tr><td>2. JUDGMENT: col-<br>lateral attack:<br>void judgment.</td></tr>
</table>

ception to this rule is that, when the judgment itself is void, he may raise the question of jurisdiction, and say that he is not guilty of contempt because there was no valid judgment which could be made a basis for such charge of contempt. Our conclusion is that his contention is true, and that there was no valid judgment on which this contempt proceeding can be founded. His certiorari proceeding herein is therefore sustained, and the order of the district court holding him guilty of contempt is annulled and set aside.—*Annulled.*

EVANS, STEVENS, DE GRAFF, and MORLING, JJ., concur.

---

ALICE HUMMEL, Appellant, v. O. O. HUMMEL, Appellee.

**DIVORCE:** Corroboration—**Difficulty Attending Proof.** Corroboration of testimony tending to establish grounds for divorce is indispensable, irrespective of the difficulty of obtaining such corroboration. (See Book of Anno., Vol. 1, Sec. 10474, Anno. 4.)

**Headnote 1:** 19 C. J. p. 133.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

DECEMBER 15, 1925.

ACTION for divorce on the statutory ground of cruel and inhuman treatment. Decree entered dismissing the petition and entering judgment against the plaintiff for costs.—*Affirmed.*

*Mears & Lovejoy* and *J. C. Murtagh,* for appellant.

*A. G. Reid* and *McCoy & Beecher,* for appellee.

DE GRAFF, J.—Plaintiff wife sues the defendant husband for a divorce, alleging cruel and inhuman treatment. Defendant answers by general denial, and further pleads that plaintiff was guilty of cruel and inhuman treatment toward the defendant, within the purview of the statute, and that whatever words were spoken or acts done by the defendant during the marital

relation were said and done as a result of the misdeeds and acts of the plaintiff. The defendant did not file a cross-petition.

The record is voluminous, and is replete with crimination and recrimination between the parties. There is no occasion to recite *in extenso* the record before us. It is better for the sake of the parties and the children involved that the charges and countercharges should be forgotten, rather than to preserve them in the permanent records of this court. We have no hesitation in saying that both parties are culpable, but the appeal is primarily concerned with the acts and conduct of the defendant, and whether the evidence of plaintiff is sufficient to base a decree in her favor.

To justify a decree of divorce on the ground of cruel and inhuman treatment, the evidence offered on behalf of the complainant must be of that character that may be properly designated as cruel and inhuman as defined by statute; and further, the acts of cruelty, as charged, must not only find support in the testimony of plaintiff, but must find corroboration in other evidence. These propositions are elementary,—but see *Yetley v. Yetley,* 196 Iowa 314; *Veeder v. Veeder,* 189 Iowa 912; *Perry v. Perry,* 199 Iowa 685; *Carlson v. Carlson,* 199 Iowa 953.

The parties to this action intermarried in 1892. To this union two children were born: a son, named Harry, born in 1899, and a daughter, Mildred, who, at the time of the trial, was married, and had a family.

It is quite apparent that, prior to 1913, no serious difficulty between plaintiff and defendant had arisen, but during the subsequent years the matrimonial ship had been rocked considerably, and apparently the waves on the domestic sea were quite turbulent at times. The trial court concluded, however, that the compass had not been lost, and that the port of happiness was still in sight.

The evidence discloses that the primary trouble found its origin in the suspicions of the wife, which led to accusations of the gravest moral character against the husband. If these suspicions had a fact foundation, no court would hesitate to sever the bond of matrimony.

We will make brief reference to the facts in these particulars. The plaintiff believed, and so testified, that the defendant

had had sexual relations with one Helen Culver, who was a roomer in the Hummel home, and that she found, in the bed occupied by the girl, some handkerchiefs that were covered with semen, and that the handkerchiefs belonged to the defendant. This incident finds no corroboration in the record. Both the defendant and the girl flatly deny any relationship, and the plaintiff admits that she never saw these parties together at any time or any place. We give the story no credence. Other accusations involving immoral acts on the part of the defendant with other women find place in the testimony of this plaintiff, but it is sufficient to state that plaintiff's suspicions find no corroborative support, and it is unnecessary to incumber this opinion with her suspicions.

One of the grave charges made against the defendant by this plaintiff was that in 1911 he had a venereal disease, and the inference to be drawn from her testimony is that this disease was communicated to her. This is a most serious and dastardly charge, and if sustained by the record, we would reverse, and write "finis" to this opinion.

It may be observed that no mention was made by plaintiff of this matter in her examination in chief, nor is there any specific allegation of this matter in her petition. She admitted, on cross-examination, that she had so accused the defendant, and attempted to justify by relating the circumstances which were the basis of her belief. She finally did admit that she could not say whether in fact he had a venereal disease. We will not review the testimony. Her accusations are not corroborated, nor does her evidence, standing alone, justify such a charge.

This case illustrates the legislative wisdom in enacting the statute that:

"No divorce shall be granted on the testimony of the plaintiff alone." Section 10474, Code of 1924.

The law does not consider the difficulty which may confront a plaintiff in securing corroborative evidence. It provides in plain English that the testimony of plaintiff must be corroborated; and unless this requirement is met, plaintiff must fail.

As said in *Knight v. Knight,* 31 Iowa 451:

"That the evidence discloses a degree of domestic infelicity very much to be deprecated, we freely admit. That it justifies

a divorce, however, upon the ground of cruelty, we do not believe.''

In this connection it may be stated that there is no proof that the health of the plaintiff has suffered by reason of the acts and conduct of the defendant, as testified to by the plaintiff, but, on the contrary, it is shown that her health has improved during the past five years. It is unnecessary, however, to comment on this phase of the statutory definition.

It is further alleged by this plaintiff that the defendant has been guilty of acts of physical violence toward her. It is claimed that, on a date not shown, the defendant threw at and struck her with a basket of wine, and at the same time kicked her. This incident is entirely void of corroboration, except that the son Harry testified that he observed that something was spilled on the front porch. The defendant, in explanation, gave his version of the wine incident, and it is as reasonable as the testimony offered by the plaintiff. The defendant denied any assault in any manner at the time in question, and in the absence of evidence corroborating plaintiff, the charge merits no further attention.

It is also claimed by the plaintiff that, on one occasion in 1916, the defendant threw cups at the plaintiff, and that, in attempting to avoid a further assault, she hurriedly left the room, and in rushing out the back door, fell and sprained her ankle. No one witnessed the alleged assault, although one witness testified that she saw the broken cups, and that the plaintiff had a sprained ankle. There is no corroboration, however, of what the plaintiff claims the defendant did at that particular time. The defendant denies the testimony of plaintiff, but admits that, by reason of certain conduct on the part of the plaintiff, he was angered, and that he did break a cup or two, but did not throw same at the plaintiff.

The plaintiff also testified to certain assaults several years prior to the trial, at which time the defendant struck her or slapped her with his fists. The trial court did not give these matters serious consideration. Neither do we. The incidents were quite remote; and furthermore, as pointed out, there is no proof that the life or health of the plaintiff was endangered.

In the decision filed by the trial court it is said:

"Even if the testimony of plaintiff as to the acts of cruelty on the part of the defendant is literally true, it will be noticed that nearly all of them occurred many years ago * * *. It is perfectly evident from plaintiff's own testimony that the real cause of the suit is not the alleged acts of violence, but her belief that defendant has been guilty of indiscretion with other women. The plaintiff has wholly failed to establish this charge, which, though not pleaded, is without doubt the moving cause of plaintiff's suit."

We have read the record. We believe that the suspicions of this plaintiff are wholly subjective.

Regardless of the unpleasantness at times between this husband and wife, the defendant is shown to be a good provider, his children have been loyal to him, and, although he may have failed at times, by reason of the accusations made by the wife, to have treated her with that kindly consideration of which the record shows he is capable, we believe that the trial court, after patiently listening to the testimony of several days' length, rightly decided the case, under the law and the facts.

The judgment entered is—*Affirmed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.