DOROTHY M. GOECKER, Appellee, v. ORVILLE C. GOECKER Appellant.

No. 44822.

DECEMBER 12, 1939.

698

Kimball, Peterson, Smith & Peterson and George H. Mayne, for appellant.

Tinley & Tinley, for appellee.

HAMILTON, J.—Two points are presented: First, that the court erred in making an order with reference to the custody of the minor child in the divorce suit, when neither party was granted a divorce, and, second, that the court erred in not granting a divorce to the defendant.

These young people were married October 18, 1935. To this union a son was born September 29, 1936. They were in their early twenties and neither had been previously married. She was a telephone operator and he had a permanent job as salesman for John Day Rubber Company. For a couple of months, she traveled with him over his territory; later, they rented an apartment where they lived until the baby was born and for some time thereafter. His work kept him out on his territory all through the week and he was only at home over week ends. One of plaintiff's chief complaints was his failure to stay at home with her as much as she thought he should. They finally bought a trailer and she went along with him. They lived in this trailer through two summers, living in an apartment in the winter. His territory was southwestern Iowa and part of northwestern Missouri. The company finally decided to move him into Nebraska territory with his residence at Columbus, Nebraska. The company asked him to consult with his wife about the move before it was decided and this he did and it was arranged, with her consent, that they move to Columbus. There he rented a five-room modern home and purchased additional furniture, the company financing him, and the couple moved into this new home. She soon became dissatisfied; so much so that she called on the company officials to see if it was possible for them to live in Omaha. She even went so far as to inquire if they would object to her living apart from him in Omaha. She was informed that her husband could keep her in a separate

apartment in Omaha, if he desired to do so, but he would have to remain in Columbus in order to hold his job. Their difficulties became so acute that a divorce was discussed between them and, apparently, there was more or less of an understanding that she was to apply for a divorce, he insisting at all times that he was going to have the baby.

She commenced the divorce suit, alleging cruel and inhuman treatment, and said nothing about the custody of the child. Defendant filed an answer to her petition in the form of a general denial and also filed a cross-petition based on the same grounds that she alleged against him—cruel and inhuman treatment— and asking for the custody of the child. She answered the cross-petition in which answer she asked that she be furnished means with which to establish and maintain a home and that the child be awarded to her. The trial court made his findings in which he held that neither the plaintiff nor the defendant was entitled to a divorce and further held that it was for the best interests of the child that the plaintiff be given his custody and control and the defendant should be required to pay for the support of said child and the decree was so entered. The defendant has appealed, raising the two points above indicated.

We are not going to enter upon a discussion of the facts, further than to state that the evidence discloses that the plaintiff's grounds of complaint were based very largely upon trivial matters. The difficulties which marred the happiness of the marriage relation are largely attributable to her unwillingness to bear children and this involved her unwillingness to permit the gratification of the natural sexual desires on the part of her husband. This, undoubtedly, was the primary motive in her seeming inclination to be separated from her husband. In dismissing the plaintiff's petition, the trial court necessarily determined that there existed no grounds for a divorce; hence, no lawful reason could be found justifying a separation or justifying plaintiff in leaving the home defendant had provided for her and the minor child. Under such circumstances, there rested upon the husband no duty to support her and the child away from his home. Leaving the home, under such circumstances, and refusing to return would amount to desertion of the husband by the wife and, if continued for the statutory period, would be grounds for divorce in an action by the husband. We are con-

strained to hold that, under such circumstances as are shown by this record and as the decree of the trial court would indicate, the trial court was in error in making an order which, in effect, excused the plaintiff from the performance of her connubial duties, such as caring for the home and extending to her husband that love and companionship to which he was entitled.

There is little evidence that he ever asked an overindulgence on her part or that he ever abused his privileges as a husband. There is no evidence of any physical violence. There is an entire absence of the usual accusations of abusive language or the application of opprobrious epithets. In order to make any kind of a showing, she was obliged to magnify many little incidents and, in her direct examination, put upon such incidents strained, unnatural and even false meanings. For instance, he allowed her one dollar a week for spending money and, in her direct testimony, she went to the extent of stating that she had to live off of this for an entire week. She also charged him with gambling and stated, as a fact, that he lost twenty dollars on one occasion. His gambling appears to consist of small antes in pastime games and the twenty-dollar loss occurred when, on one occasion, his coat, which contained the money, was stolen. When the whole truth was brought out, it appears that she was always provided for; that he had large quantities of canned goods always on hand; that, when she was with him, he furnished the money and she was well provided for; that their home was modern with oak floors and was equipped with an electric icebox or refrigerator, costing nearly $300, and nice furniture; that he installed a gas heater in this new home—all indicating that they lived as well and much better than most young people starting out in life. In fact, in his cross-petition, he contends that he was forced to contract an indebtedness of about a thousand dollars in an effort to satisfy her wants and wishes. His employer took the witness stand and testified to her interview with him; to the fact that the trouble they were having was crippling the usefulness of her husband as an employee; and that his work had been unprofitable to the company because of it.

We, then, have a situation where the record shows and the court so found that the husband was true to his marriage vows and guilty of no conduct warranting the plaintiff in absenting herself from the home and from the companionship, association

and necessary duties devolved upon a housewife—a home, which, at the time of the trial, was still open and furnished, where, if she would do her part, they could all live comfortably and happily together. If she, then, will again take up her lawful burden, in this home provided for her, as a dutiful and loving wife and mother, it is idle to say there would or could be a better place for the little child, for within the walls of the parental home, humble though it may be, is the natural abode of the offspring of these parents. We decline to enter upon a discussion of the power of the trial court to make the order concerning the custody of this child where a divorce is denied. This matter has been heretofore considered by this court. See, Oliver v. Oliver, 216 Iowa 57, 248 N. W. 233; Porter v. Porter, 190 Iowa 1126, 181 N. W. 393; Mollring v. Mollring, 184 Iowa 464, 167 N. W. 524; Garrett v. Garrett, 114 Iowa 439, 87 N. W. 282.

In this case, we simply say, under the record, the trial court's order is unjust and inequitable and, hence, erroneous. Under this record, the place for this child is with its parents in this home. The only reason it isn't there is because of plaintiff's conduct. What the rights of these parties may be in the future concerning the matters involved herein will depend upon their future conduct. Plaintiff may persist in living separate and apart from her husband; she may refuse to return to this home he has provided for her; however, we have no right to assume this will be so. The result we have reached leaves the matter open for reconciliation and a restoration of amicable relations between these parties. This is as it should be and we refuse to place our stamp of approval upon the order of the trial court which, in effect, paves the way for a continuation of the estrangement and, at the same time, compels the continuation of the marriage relationship, placing the husband in an intolerable situation naturally productive of evil consequences and, hence, inimical to the best interests of society.

As to the husband's right to a divorce, the evidence falls short of establishing the statutory ground of cruel and inhuman treatment such as to injure his health and ultimately endanger his life. While the wife's conduct, in refusing to go along with her husband and share the burdens naturally incident to the relationship of marriage, to care for her family in

702

the new home provided for her and her conduct in meddling in his business affairs, was reprehensible and inexcusable, yet there is no evidence in this record that such conduct so affected him as to injure his health or to ultimately endanger his life. It only goes to the extent of showing that it rendered him unprofitable to his company as an employee and to that extent he was less capable of earning a livelihood for himself and his family. Whether this was due to nervousness, worry or merely loss of time and attention to his duties is left entirely to speculation. When asked as to how her conduct affected him mentally, he frankly stated: "Well, I really didn't pay much attention to it for I didn't worry for I knew I hadn't done anything wrong in my mind." In the absence of physical violence, cruel and inhuman treatment, to justify a divorce, must not only endanger the health but must also be such as to ultimately endanger the life of the complaining party. Siverson v. Siverson, 217 Iowa 1167, 251 N. W. 653; Cruse v. Cruse, 201 Iowa 810, 208 N. W. 324; White v. White, 200 Iowa 779, 205 N. W. 305.

For the reasons indicated, the decree of the trial court is, in so far as it relates to the custody and support of the child, reversed, but is otherwise affirmed.—Affirmed in part and reversed in part.

CHIEF JUSTICE and all JUSTICES concur.