. Leonard Nelson, Appellee, v. Esther Nelson, Appellant.

No. 39509.

June 24, 1929.

*Swan, Martin & Martin,* for appellant.

*Ernest Miller,* for appellee.

Stevens, J.—The parties, who were respectively about 22 and 19 years of age, were married October 13, 1923. Their only child, a daughter, was born almost exactly a year later. The  cause alleged in the petition for a divorce is cruel and inhuman treatment. The defendant filed a cross-petition, praying a divorce for the same cause. The record discloses either a want of maturity on the part of both or a reckless disregard of normal marital obligations. It is suggested by counsel that, if modern social standards are applied, the conduct of the parties may, to a large extent, be excused. A reversal may, however, be readily founded upon far more rational and persuasive grounds. There is nothing in modern social standards, whatever that may mean, which can in any way affect the interpretation of statutory causes for divorce. These have existed in substantially

the same form since the Code of 1851. The causes for divorce have not been materially modified, nor have the laws of Sinai, by divine authority, been revoked.

The appellee, according to his own testimony, began his career as a husband by boasting to his wife of his affection for and relations with other women. Not to be outdone by her husband, the wife found pleasure in the frequent society of other men, both married and unmarried. The cruelty alleged by appellee is largely the conduct of appellant with other men, but physical violence is also charged. The physical violence complained of occurred, however, either in resisting assaults made by him or in an effort on the wife's part to maintain her side of the fight. The evidence shows that appellee on numerous occasions inflicted gross physical violence upon appellant, and that she, evidently possessing considerable temper, resisted with some show of force. With one possible exception, we think it must be inferred from the evidence that appellant was innocent of serious moral turpitude, and there are grounds for charity in the interpretation of the evidence as to that. We shall not set out the evidence in detail, as we believe it possible for these young people, for the good of themselves and their infant child, to resume their marital relations.

Appellant was for a time an inmate of the sanatorium at Oakdale, but has apparently recovered her normal health. While there, she became acquainted with a young man by the name of Fisher, with whom she later started to go to New Mexico. Arriving at Washington, Iowa, she changed her mind, and wired her husband to meet her at Des Moines. This he did. She then told him what she had done, denying, however, any act of infidelity, and saying that, for the sake of Nadine, she desired to go home. Fisher returned to Des Moines with her. After considerable conversation and discussion among the three, the parties hereto agreed to return home. Appellant at that time informed appellee that she loved Fisher, and, by mutual arrangement, she was promised permission to correspond with him. Appellee, as a part of this arrangement, agreed, when they arrived home, that appellant might send Fisher, who was financially depressed, $15. This was to defray the expenses of returning the trunks and valises of Fisher and appellant from a point in New Mexico to which they had been sent. Upon the return of the parties to

Harlan, where appellee's parents reside, appellant wrote a letter, expressing great affection for Fisher, and stating that a draft for $15 was inclosed. The letter, unsealed, was given to appellee, who retained it in his possession, and it was offered in evidence on the trial. Later, appellee procured $50 and gave it to appellant. She then went to Des Moines, for some purpose, but shortly returned. The parties have not since lived together.

Appellee confessed upon the witness stand that the girl whom he called ''Peggy,'' whom he frequently mentioned to his wife, was a fiction.

The attitude and conduct of the parties, together with the traits of character displayed, are not readily explainable. Just what emotion or trait of human character could impel appellee to inflict gross physical violence upon his wife and later, with knowledge of the facts, solicit her and her self-confessed lover to go to dinner and a place of public amusement with him, we leave for later explanation. This occurred when they were in Des Moines, and immediately after the return from Washington. A reversal of these manifestations would have been largely conducive to appellee's domestic felicity.

It is true that this court has held, and this is the law, that the utter disregard of the husband of his marital vows, resulting in the destruction of his wife's health and happiness, is sufficient to constitute cruel and inhuman treatment such as to endanger her life, within the meaning of the statute. *Craig v. Craig*, 129 Iowa 192. Just what acts in every instance will amount to cruel and inhuman treatment, within the meaning of that term, is not susceptible of precise definition. The remaining clause, ''such as to endanger life,'' while frequently given a liberal construction, is, nevertheless, substantive, and not relative. To what extent the conduct of appellant is the fault of appellee, no one can know. Both indulged a false philosophy of life, and each must assume some part of the responsibility for their error. Appellee was guilty of cruel and inhuman treatment of his wife. She was likewise guilty. He pretended to her to be faithless, but we doubt whether he was in fact. The record is full of evidence of crimination and recrimination. Appellee forgave appellant's conduct, and they agreed to forget the past and to live together. It is true that no plea of condonation was interposed by either party. The record is, in any event, barren of any evidence tend-

ing to show that appellee's life was endangered or his health appreciably impaired. He claims, at most, to have suffered somewhat from nervousness and loss of appetite and sleep. The showing at this point is insufficient.

Interpreting the record as a whole, we are of the opinion that appellee is in no position to complain of much of the treatment received by him from his wife. She stoutly denied that she ever committed adultery. The evidence on this point is not conclusive. In any event, there was a mutual agreement to forget the past and live together. This, of course, is condonation, which, to be available as a defense, must be affirmatively pleaded. Evidence thereof may, however, properly be considered in connection with other evidence as tending to explain the seriousness of the conduct of appellant, as viewed by appellee. Nadine is, apparently, an attractive child. It may be assumed that biological laws by which it is said the general average of human intelligence is largely maintained have operated more favorably in her case than in behalf of the parents. Appellee testified that his wife is fond of her. She has a right to their joint care and support.

It is our conclusion, upon the whole record, that neither party is entitled to a divorce, and the judgment is accordingly reversed.—*Reversed.*

ALBERT, C. J., and FAVILLE, DE GRAFF, and MORLING, JJ., concur.