ANDREW M. WALLACE, Appellant, v. ELSIE WALLACE, Appellee.
No. 39732.

APRIL 10, 1931.

Robertson & Wolfe, for appellant.

R. J. Organ, for appellee.

KINDIG, J.—Andrew M. Wallace, the plaintiff and appellant, is the husband of Elsie Wallace, the defendant and appellee. They were married at Mondamin on February 24, 1924. To them was born one child, a boy, named George Andrew Wallace. This child is now approximately six years of age. Appellant is about twenty-six years old, and resides on a farm of 140 acres near Mondamin. His mother owns the farm, but appellant

rents it from her, or works as her "hired man". Appellee is about twenty-seven years old, and lived with her parents at Mondamin before her marriage to appellant. The appellant and appellee were childhood acquaintances and continued their friendship until the time of their marriage.

Before the marriage, the appellant broke into and entered a garage building in Mondamin, for which offense he was convicted and sentenced to the penitentiary. However, he was paroled by the presiding Judge. He, together with three boys, broke into said building and stole two tires. It is said the offense was the result of a drinking party. Parenthetically it is noted that appellee knew of this episode when she married appellant. After their marriage, the appellant and appellee lived in Nebraska, Wyoming, Minnesota, and then returned to the farm in Iowa. While in Omaha, appellant worked for the Ford Automobile Company. Apparently he did similar work in Minneapolis, Minnesota. When in Wyoming, however, he was employed on a ranch. Upon returning from Wyoming, appellant went to work on his mother's farm, as before related. From the beginning, the married life of this couple was stormy and inharmonious. Each claims the right to a divorce from the other.

I. Complaint is made by appellant because the district court granted appellee: First, a divorce; second, the custody of the child; and, third, alimony. So, the first problem confronting us is to determine whether the district court's judgment should be reversed because the appellee was granted such relief. No brief or argument has been filed in behalf of appellee. An argument is made by appellant, however, wherein he claims that appellee did not furnish evidence which meets the statutory requirements. Without such evidence, appellant concludes appellee is not entitled to the divorce on her cross-petition.

Both appellant and appellee base their respective applications for divorce on the statutory ground of inhuman treatment. According to Section 10475 of the 1927 Code:

"Divorces from the bonds of matrimony may be decreed against the husband for the following causes: * * *

"5. When he is guilty of such inhuman treatment as to endanger the life of his wife."

Likewise, under Section 10476 of the same Code:

"The husband may obtain a divorce from the wife for like cause * * *."

Hence it is material, in our present investigation, to determine whether appellant's conduct toward the appellee was such "as to endanger (her) life". Under this statute, life may be endangered by unkind treatment though it involves no physical violence. Craig v. Craig, 129 Iowa 192; Coulter v. Coulter, 204 Iowa 575.

In the case at bar, appellee relies not only upon appellant's conduct, which amounts to physical violence, but also his acts that do not constitute such violence. There is much said in appellee's testimony concerning appellant's mistreatment of her. She emphatically declared that appellant struck, bruised, and physically injured her. Upon at least one occasion, according to appellee's statements, appellant knocked her down. At another time she says he injured her wrist, or arm, to the extent that a swelling developed which has not disappeared. Furthermore, it is urged by appellee that appellant cursed and swore at her. When so doing, she declared, he used vile and indecent language. Again, it is insisted by appellee that appellant falsely accused her of infidelity. Also appellee asserts that appellant made an intoxicating liquor known as "home brew" and illegally sold it. He likewise, according to appellee, frequently drank such liquor and became intoxicated. Among the further charges made by appellee against appellant is that his temper was ungovernable and violent. Appellee says that appellant continually complained and scolded without justification or excuse. The further claim is made that appellant did not properly support appellee and her child, although he was able so to do. Corroboration for many of appellee's charges against appellant may be found in the testimony of her supporting witnesses.

On the other hand, appellant denies many of the foregoing allegations made against him. While so doing, however, appellant admits that he slapped appellee with his open hand, but denies that he struck her with his fist. As an explanation of his conduct in that regard, appellant states that he slapped appellee because she was cursing and reviling him. Too, appellant concedes that he drank some intoxicating liquors, but

denies that he became intoxicated. Appellant also denies that he manufactured "home brew", or illegally sold the same. Not only does appellant deny that he manufactured "home brew", but he charges that appellee herself made it. By way of counter-charges, appellant says that appellee cursed and swore at him. She, upon such occasions appellant claims, used very vile and unladylike language. It is charged by appellant also that appellee had an uncontrollable temper and continually harassed and annoyed him. So, too, appellant declares that appellee drank the "home brew" aforesaid, and frequently became intoxicated.

In addition to the foregoing, it is urged by appellant that appellee went to public dances, conducted herself unseemly, and staid out late at night. He likewise insists that appellee had an illegal operation performed upon herself in order to produce an abortion. Another charge made by appellant against appellee is that she refused to do the housekeeping and make a proper home for him. When the couple were at Wyoming, appellee left appellant and came back to Iowa. Some of appellant's testimony is no more than hearsay and gossip which does not rise to the dignity of competent evidence.

Of course, appellee denies practically all of the charges made by appellant against her. The admission is made by her, however, that she drank intoxicating liquors and swore. Although, when so admitting, appellee declares that she swore because appellant annoyed and struck her, and she drank the intoxicating liquors because he likewise indulged therein. An emphatic denial is made by appellee that she caused an illegal operation to be performed upon herself in order to produce an abortion.

There is no direct testimony that appellee was unfaithful to appellant, but some of her conduct was unladylike and questionable. A study of the record reveals that the underlying cause of the trouble between appellant and appellee was the ungovernable temper of each. Appellee testified that appellant was a good steady worker; and appellant admits that appellee loves the minor child, George. Manifestly appellee swore as well as appellant, when there seemed to be a "provocation". Likewise, she, as he, drank intoxicating liquors. One appears to be as much at fault as the other.

No claim is made by appellee that she fears for her life or that there is danger that appellant will inflict further bodily injury upon her; that is to say, appellee does not claim that appellant is liable again to inflict upon her physical violence. Neither does she say that the appellant is likely to treat her inhumanly in the future. The injury to appellee's arm was caused because appellant thought she was endeavoring to remove the baby out of the state where appellant could not see the child again. Upon that occasion, appellee, together with certain relatives, had possession of the child in an automobile which they were driving away from appellant's home. In order to obtain repossession of the child, appellant followed appellee in his automobile, and when he overtook her and the child he grappled with her in order to get possession of the baby. It was during this encounter that appellee's arm was injured and the lump on her wrist afterward appeared, as before claimed. There is much doubt whether appellant actually knocked appellee down. Moreover, there was provocation for appellant's physical attacks upon appellee; for instance, it seems that he struck or slapped her when she was swearing at, and otherwise annoying, him. Without claiming that her life is in danger, appellee urges that appellant's attitude has made her nervous. Yet she does not contend that such nervousness will permanently impair her health or endanger her life. Therefore, appellee's testimony falls short of meeting the statutory requirement that appellant's inhuman treatment, in order to be a ground for divorce, must be such "as to endanger (her) life". This conclusion is supported by the cases from which the following excerpts are taken. In Yetley v. Yetley, 196 Iowa 314, reading on page 316, we said:

"It is a matter not to be overlooked that our statute has a very important and essential qualification to the provisions which make cruel and inhuman treatment a ground for divorce, and that is that it must be such 'as to endanger the life' of the spouse. 'Incompatability' is not a ground for divorce in this state. * * *"

Again, we declared in Perry v. Perry, 199 Iowa 685, reading on page 686:

"Plaintiff (the one applying for divorce), therefore, must

fail unless the evidence of alleged cruelty charged to the wife caused the impairment of his (the husband's) health or endangered his life, with reasonable apprehension of danger in the future."

Our statement in Hill v. Hill, 201 Iowa 864, reading on page 866, is to the same effect:

"* * * the primary question for determination is whether or not the life of the spouse is in danger. If not, the character of the treatment, however despicable, is not a ground for divorce. It is not the intention of our statute that a decree of divorce shall be granted for the mere asking."

To the same effect see Nelson v. Nelson, 208 Iowa 713; Walker v. Walker, 205 Iowa 395, and Owen v. Owen, 90 Iowa 365.

Perhaps appellant's conduct toward appellee would justify a divorce under the statute were she innocent and blameless; but under the record here presented a fair conclusion is that her guilt equals his. Moreover, it does not appear that appellant's conduct is such as to endanger appellee's life. Hence, she is not entitled to a divorce under the statute, and the district court erroneously granted her such relief.

II. Having concluded that appellee is not entitled to a divorce, it is next necessary to determine whether the district court mistakenly denied appellant such relief.

The basis for a divorce set forth in appellant's petition was, as before stated, inhuman treatment. Is appellant, therefore, entitled to such relief because appellee inflicted inhuman treatment upon him? Such inquiry is largely answered by the discussion in Division I above. Obviously appellant is as guilty as appellee. There is no basis for approving the action of one over that of the other. Neither does it appear that appellee so violently treated appellant as to endanger his life. If appellant's life is in danger, such jeopardy was brought about because appellee's conduct made him nervous. That nervousness, however, if any, does not appear to be of sufficient character to endanger life or permanently impair health.

While there is some testimony in the record concerning appellant's nervousness produced by appellee's conduct and the effect of his further living with appellee, yet the whole

record regarding this subject-matter is not clear, definite, or satisfactory. Consequently, it is not clear that the proof required by the statute is sufficient. Without that proof appellant is not entitled to a divorce. Resultantly, the district court properly denied him a divorce.

Wherefore that portion of the district court's judgment and decree granting appellee a divorce, the custody of the child, and alimony, with the exception hereafter made, is hereby reversed. We do not reverse that portion of the district court's judgment and decree allowing appellee alimony in the instances, if any, where such alimony has already been paid by the appellant. Such portion of the said judgment and decree is affirmed. And that part of the judgment and decree which denies appellant a divorce is also affirmed.—Affirmed in part; reversed in part.

FAVILLE, C. J., and EVANS, STEVENS, MORLING, ALBERT, and GRIMM, JJ., concur.