Louisa G. Siverson, Appellant, v. A. G. Siverson, Appellee.

No. 41923.

December 12, 1933.

Rehearing Denied March 16, 1934.

Stipp, Perry, Bannister & Starzinger, for appellant.

Emmert, James & Lindgren, for appellee.

Kintzinger, J.—Plaintiff and defendant were married in August, 1922. Both parties are intelligent people and prior to their marriage were engaged in school teaching. The plaintiff was the only child of Mrs. Grace, also a former school teacher, who lived at Des Moines, Iowa. After their marriage plaintiff and defendant moved to Wanamingo, Minnesota, where the defendant had secured a position as head of the schools in that town. Complaint is made by plaintiff as to the poor condition of the house they rented at Wanamingo. The record shows, however, that there were only two houses available in that place, and the house they moved into was selected by both. The defendant kept his position at Wanamingo for two years, when he was appointed principal of the high school at Webster City, Iowa, at an increased salary. He remained there until 1928, when he secured a position in one of the high schools at Des Moines, Iowa. The plaintiff's mother, during all this time,

resided in Des Moines, and plaintiff was a frequent visitor at her mother's home and remained there for long intervals at a time. Two children were born as a result of the marriage, one in 1923 and one some years later. The plaintiff after each child's birth became very sick and remained so for long periods of time requiring medical, hospital, and nursing attention. She also had an attack of appendicitis and was ill from that for a long time. After securing his position at Des Moines, plaintiff and defendant lived with plaintiff's mother, and during that time most of the family expenses and the taxes upon her mother's property were paid by the defendant. The plaintiff's mother had purchased a tract of land on the outskirts of the city for $1,700. In 1932 defendant paid plaintiff's mother $1,600 for a part of the land she paid $1,700 for; the deed ran to both plaintiff and the defendant.

The record shows that defendant was very ambitious to succeed in life. During the summers he entered the military schools of the government, receiving a salary therefor, and was finally promoted to a captaincy in the United States Reserve Officers Infantry. The record shows the defendant was a man of exemplary habits, and always anxious to better his condition in life.

Plaintiff makes some complaint about the poor living conditions in their early married life at Wanamingo causing her ill health; she also complains that her ill health was contributed to by defendant's neglect, which she claims consisted in the lack of sociability and attention to her; her chief ground of complaint being that he would frequently "pout" and neglect to talk to her, and that such treatment continued during their married life. There is no corroboration of her evidence on this point prior to the time they moved to Des Moines, in 1928, but on the contrary it is disproved by her own letter to the defendant on receiving his appointment in the Des Moines High School in 1928. In this letter she says:

"Do you realize dear that we can be together all next year and that unless something unprecedented happens you will have an assured job for the next twenty years—it will free you from so much responsibility and we should have most of our evenings to ourselves. You will be here to help direct the children and enjoy them."

There is not a word of evidence in this record, either by the plaintiff herself or any other witnesses, tending to show that the defendant abused her in any manner until a dispute arose on July 3,

1932. The usual testimony of beating or striking or physical abuse is lacking. Neither is there any evidence that he at any time called her vile or obscene names, or that he used vile or obscene language in her presence or in the presence of the children. Some of plaintiff's own witnesses testified that from observations made by them, the defendant was always kind to the children and they never saw the defendant exhibit any fits of temper. Such was the testimony of all the neighbors who were called as witnesses. Another witness, who had been a maid at the home for several weeks, said she never saw the defendant demonstrate any fits of temper, that he played with the children, and always liked them.

The principal of the high school in which Mr. Siverson was employed testified that he had 225 children under him, ranging from 12 to 15 years, in the ninth and tenth grades, and he never had any complaints about him exhibiting any fits of temper, and had never known him to have any trouble in the schools.

His wife and her mother testified that he exhibited fits of temper towards the children in the home and that on some occasions he punished them too severely. Without going into further details of the evidence, it is sufficient to say that the record fails to show any instances of abuse or ill treatment by the defendant toward the plaintiff personally. The record does show that any disagreements in the home were not between plaintiff and the defendant, but rather between plaintiff's mother and the defendant. Such disagreements were not evidenced by any mistreatment on the part of the defendant toward either the plaintiff or her mother. The defendant cultivated a large garden on the premises, and had a small room in the house for his den. If any disagreements arose, the defendant would repair either to his den or to the garden. Plaintiff claims that at such times the defendant was pouting and unsociable. The defendant claims that when such disagreements arose he simply said nothing and repaired to his den or the garden, to avoid any arguments.

The evidence shows that appellee's mother-in-law had a dispute with a contractor over some cement work on her premises a few days before July 3, 1932. The defendant refused to take any part in the dispute, and as a result she became angry and blamed him for not taking her part. At that time he also repaired to his den or the garden. His mother-in-law exhibited her displeasure about this for several days, until Sunday, July 3, 1932. At that time he told his wife that he would no longer remain silent, and in a con-

versation with his mother-in-law that morning he claims that she told him he could leave. He claims he asked his wife if that's the way she felt about it, and she answered that it was. He then replied that he would leave. He had made arrangements on Sunday morning to take the family to Sunday school in his automobile. They started out for this purpose in the car, but as a result of the conversations about his leaving home, they all returned. Before leaving the car he told his wife he would take the automobile with him. This was the cause, and the time, of the only violence ever used by defendant towards his wife. The evidence shows that she told him he couldn't take the car. To prevent him from so doing she grabbed the key out of the car. He tried to get possession of the key. She then threw the key out on the roadway into the mud. He attempted to recover the key, but to prevent him from so doing, she jumped out ahead onto the key. Thereupon, and for the purpose of recovering the key, he took hold of her arms and body and held her firmly until she released the key. In doing this her arms and body were considerably bruised. This is the only evidence of any physical violence ever inflicted on the plaintiff by the defendant.

I. This case was tried upon the theory that the defendant was guilty of such cruel and inhuman treatment toward the plaintiff as to endanger her life. In order to secure a divorce upon this ground it is necessary to show (1) that the treatment was cruel and inhuman, and (2) it was such as to endanger her life. In this case there are two questions for determination: (1) Whether or not the treatment of the plaintiff by the defendant was cruel and inhuman; and (2) whether or not it was such as to endanger her life.

Although all of the evidence is not hereinabove set out in detail, we have examined the record closely, and from our examination thereof, we are constrained to find that the plaintiff has utterly failed to establish either one of these elements. Prior to the day defendant left his home, there was absolutly no evidence that any physical violence was ever used by defendant towards his wife.

We recognize the rule that physical violence is not always necessary to warrant a divorce. In all such cases, however, it invariably appeared that the defendant verbally abused plaintiff in such a manner as to start breaking down her health, by calling her vile and obscene names, by accusing her of infidelity, or by cursing and swearing in her presence, and the presence of her children or others. There is no evidence in this case of any such verbal

abuse or other misconduct toward the plaintiff-appellant. At various times when disagreements may have arisen, the record shows that in order to avoid any verbal dispute the appellee simply withdrew from the scene, and repaired to his garden or his den. He always tried to avoid family disturbances. Plaintiff and her mother called this action on his part "pouting." If it was, it would amount to no more than "incompatability of temper," and that is no ground for divorce in this state.

The only evidence of any physical violence, and that mainly relied on in this case, as showing cruel and inhuman treatment, was the physical violence used by the defendant in attempting to recover his automobile key on the day he left. The cause of this physical violence was of plaintiff's own making. The defendant merely attempted to get possession of the key to his automobile, and only used force enough to recover it. The use of physical violence under such circumstances is not sufficient to warrant a divorce. Owen v. Owen, 90 Iowa 365, 57 N. W. 887; Wallace v. Wallace, 212 Iowa 190, 235 N. W. 728.

Even though the violence used at that time may not have been justified, it is our belief that the evidence fails to show that such treatment in and of itself was sufficient to endanger her life. The appellant's testimony is not sufficient to meet the statutory requirement that any inhuman treatment alleged was sufficient to endanger her life. It is the settled law of this state that unless the alleged cruel and inhuman treatment is sufficient to endanger her life a divorce will not be granted. Perry v. Perry, 199 Iowa 685, 202 N. W. 572; Yetley v. Yetley, 196 Iowa 314, 194 N. W. 88; Hill v. Hill, 201 Iowa 864, 208 N. W. 377; Nelson v. Nelson, 208 Iowa 713, 225 N. W. 843; Walker v. Walker, 205 Iowa 395, 217 N. W. 883; Owen v. Owen, 90 Iowa 365, 57 N. W. 887; Wallace v. Wallace, 212 Iowa 190, 235 N. W. 728.

The history of the defendant's married life, as shown by the record, is not sufficient to warrant the criticism or condemnation charged, and it will not do to hold that such conduct would justify a decree of divorce. If so, then marriage relations in general would be greatly weakened. The record does not show that the disputes alleged were any more serious than the ordinary disputes arising in the best of regulated families. It is our conclusion that the record in this case fails to show any grounds for a divorce.

We believe the judgment of the lower court was right, and it is hereby affirmed.

KINDIG, CLAUSSEN, DONEGAN, and ANDERSON, JJ., concur.