IONE L. BURLINGAME, appellee, v. ROBERT S. BURLINGAME, appellant.

No. 52377.

(Reported in 148 N.W.2d 493)

FEBRUARY 7, 1967.

Cosson, Christianson & Hohnbaum, of Des Moines, for appellant.

Leighton A. Wederath, of Carroll, for appellee.

MOORE, J.—In this action both parties seek a divorce. By petition and counterclaim each charges the other with cruel and inhuman treatment. The trial court granted plaintiff a divorce, custody of the parties' three minor children subject to visitation by defendant and made a property division. Because of defendant's illness and unemployment the question of support was reserved for future consideration. Defendant has appealed.

Appellant assigns two propositions for reversal. The trial court erred (1) in holding appellee established the necessary grounds entitling her to a divorce and (2) in denying appellant a divorce on his counterclaim.

I. The general rules of law applicable here are well established. Our review is de novo. Rule 334, Rules of Civil Procedure. To entitle a party to a divorce under Code section 598.8(5) it is necessary two elements be proven, (1) inhuman treatment and (2) danger to life therefrom. Peitersen v. Peitersen, 253 Iowa 893, 894, 895, 114 N.W.2d 299, 300; Howe v. Howe, 255 Iowa 280, 282, 122 N.W.2d 348, 349; Arnold v. Arnold, 257 Iowa 429, 434, 133 N.W.2d 53, 57; Smith v. Smith, 258 Iowa 557, 560, 561, 139 N.W.2d 453, 456; Lehmkuhl v. Lehmkuhl, 259 Iowa 686, 690, 145 N.W.2d 456, 459.

We have frequently held life may be endangered by impairment of health. Rasmussen v. Rasmussen, 252 Iowa 414, 420, 107 N.W.2d 114, 118; Peitersen v. Peitersen, supra. Also that danger to life is sufficient where the danger is reasonably apprehended. Weatherill v. Weatherill, 238 Iowa 169, 187, 25 N.W.2d 336, 346; Phillips v. Phillips, 251 Iowa 1310, 1313, 104 N.W.2d 832, 833; Howe v. Howe, supra; McMurray v. McMurray, 256 Iowa 97, 126 N.W.2d 336, 338.

Proof of physical violence is not always necessary. Any mistreatment which deprives a spouse of needed rest, peace of mind, and affects the nervous system so that health is undermined, may endanger life as effectively as physical violence. Cimijotti v. Cimijotti, 255 Iowa 77, 79, 121 N.W.2d 537, 538; Hancock v. Hancock, 257 Iowa 119, 123, 131 N.W.2d 757, 760; Arnold v. Arnold and Smith v. Smith, both supra. A long continued, regular and persistent course of faultfinding, criticisms and belittling, on the part of one spouse, may amount to cruel and inhuman treatment, and where there is also a persuasive showing that such conduct has affected the health, physical or mental, and to some extent has thereby endangered the life of the spouse, a sufficient cause has been made to justify a divorce. Hand v. Hand, 257 Iowa 643, 651, 652, 133 N.W.2d 63, 69; Lehmkuhl v. Lehmkuhl, supra, 259 Iowa 686, 691, 145 N.W.2d 456, 460.

In cases such as this much depends upon the credibility of witnesses, their attitude and demeanor, and we give considerable weight to the fact findings of the trial court but are not bound by them. Rule 344(f)(7), Rules of Civil Procedure; Britven v. Britven, 259 Iowa 650, 652, 145 N.W.2d 450, 451, and citations.

Applying these and other well established rules, each action of this kind must rest on the particular facts shown. Precedents are of little value. Baker v. Baker, 252 Iowa 1161, 1163, 110 N.W.2d 236, 237; Howe v. Howe and Lehmkuhl v. Lehmkuhl, both supra.

II. Appellant and appellee were married in Des Moines, July 12, 1944. Neither had been married before. He was then 36 and she 28 years of age. Both were college graduates. Appellee had been teaching school. Appellant was a radio broadcaster. He had been living at a Des Moines hotel. Three children were born to the parties, a girl, 19, and twin boys, 16, at trial time, July 1965.

Immediately after marriage the parties lived for eight months in New York and then in Australia but have lived in Des Moines since 1948. Their home, in which they lived for many years, was under foreclosure at trial time. Appellant had

been engaged as a news broadcaster, secretary of a manufacturers' association and a part-time instructor at Drake University. During the last few years he spent little time with his wife and family other than the evening meal when he was usually very irritable. He was extremely sensitive about money matters but never revealed the amount of his earnings to appellee.

On the second night of the marriage, appellant said: "Now that I have you, I'm not sure that I want you." This upset and troubled appellee deeply.

Early in their marriage and after they had returned to the United States he wrote her a letter asking for a divorce. There had been no argument. This came as a shock to appellee. She knew of no reason for such a request. Several times during the later years he threatened plaintiff with divorce in the presence of their children. This usually followed arguments started and carried on primarily by appellant when he returned from work in a disagreeable mood. The three children testified their mother was not at fault. Oftentimes appellant said: "Oh, if I were back in my hotel room alone."

Appellant refused or was unable to assume the responsibility of marriage. He had a persecution complex that everything happened to him. Many times he stated: "The responsibility of a home and a family is too much. It doesn't happen to anybody except me." Appellee spent many hours attempting to help him and assumed most of the family management. He was severe and unreasonable in his criticism of her efforts. Anything that happened to the children, such as an injury at play, in his opinion, which he expressed loudly and repetitiously, was her fault.

He showed no sympathy or understanding of the children's troubles. Each testified they feared the tongue-lashings which he gave them and appellee in increasing frequency during the last two years before the parties separated. They referred to it as "browbeating" by their father. Appellee was exposed to more "browbeating" than the children.

Appellant often displayed a violent temper and became infuriated if the children cried or things did not meet his approval. On occasions he was a perfect host but sometimes

was rude and sulked in the presence of relatives and family friends.

When in a bad mood appellant slammed doors, stomped the floor and threw things around the house. Several times he awoke appellee and pursued his pattern of faultfinding and criticism. Many times she begged him to "lay off her" and stated "she couldn't take anymore." This was of no avail.

Appellant's abuse and harassment caused appellee to become extremely nervous. She lost weight and was unable to eat. A neighbor described appellee's condition in detail and stated she could hardly hold her cards at the bridge club. The children were much concerned about appellee's health deterioration.

In an attempt to avoid appellant's screaming and yelling at her, appellee for several months before the separation fixed the evening meal and often left the home. She remained away until later in the evening. She testified she felt she could not stay in the house and had to get away. Much of her time was spent just driving around the city. She went shopping, to the movies and to her bridge and study clubs.

This caused appellant to be worse rather than better as she had hoped. She did not disclose to him where she was spending her time. She usually was accompanied by a woman neighbor and longtime friend. On some occasions on returning she was locked out and was compelled to sleep in the basement or elsewhere. When she was allowed entrance appellant often met her at the door with raised fists but never struck her. In the presence of the children he called her a tramp, louse, witch, a philanderer and told her she was no good.

After appellee's petition for divorce was filed, appellant left the home and never attempted a reconciliation.

Following the separation appellee remained in the home with the children and found no necessity to leave in the evenings. Her health improved, she was again able to eat in a normal manner and gained some weight.

Appellant was the only witness in his behalf regarding their domestic difficulties. He admitted they had extended over several years and he felt appellee's absence from the home was

for the purpose of baiting him. He testified her conduct in this regard caused him to be extremely nervous.

Regarding the testimony of appellee, the children and others he stated: "I don't believe I was quite as nasty about it [money matters] as has appeared." Other than her absence from the home he made no real accusations against appellee.

The record is undisputed that appellee was a cultured, refined, sensitive and gracious person. Appellant's reprehensible conduct over a long period, as disclosed here, undoubtedly constituted cruelty such as to impair appellee's health and endanger her life. Our conclusion finds strong support in Cimijotti v. Cimijotti, 255 Iowa 77, 121 N.W.2d 537; Hand v. Hand, 257 Iowa 643, 133 N.W.2d 63; Britven v. Britven, 259 Iowa 650, 145 N.W.2d 450.

We conclude the holding of the trial court is correct.—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.