Mildred June PARDIE, Appellant,

v.

Delmar Earl PARDIE, Appellee.

No. 52935.

Supreme Court of Iowa.

May 7, 1968.

William H. Wellons, Muscatine, for appellant.

Stanley, Bloom, Mealy & Lande, Muscatine, for appellee.

RAWLINGS, Justice.

Plaintiff wife filed petition for divorce and defendant cross-petitioned asking the same relief, each party asserting cruel and inhuman treatment on the part of the other. Trial resulted in denial of relief sought by either plaintiff or defendant, with attendant order of dismissal. Plaintiff alone appeals. We are accordingly confined, and affirm.

In seekng a reversal plaintiff contends trial court erred in finding, (1) her action was not brought in good faith, and (2) defendant's conduct, though reprehensible, did not endanger plaintiff's health.

■ I. Our review is de novo. We consider the facts as well as the law, drawing such conclusions therefrom as are deemed proper. As this court has previously stated, precedents are of little aid, each case being determinable upon the factual situation peculiar to it alone. Rule 344, R.C.P.; Lessenger v. Lessenger, Iowa, 156 N.W.2d 845, 846; Fritz v. Fritz, 260 Iowa 409, 148 N.W.2d 392, 395; Burlingame v. Burlingame, 260 Iowa 18, 148 N.W.2d 493, 494; and Arnold v. Arnold, 257 Iowa 429, 433, 133 N.W.2d 53.

■ On the other hand in matters of this nature where so much depends upon credibility of witnesses, their attitude, conduct and demeanor, we give weight to trial court's findings, but are not bound by them. Rule 344(f) (7), R.C.P.; Burlingame v. Burlingame, supra; McMurray v. McMurray, 256 Iowa 97, 106, 126 N.W.2d 336; Cimijotti v. Cimijotti, 255 Iowa 77, 79, 121 N.W.2d 537; and Massie v. Massie, 202 Iowa 1311, 1312, 210 N.W. 431.

■ II. In the instant case it was incumbent upon plaintiff to prove by a preponderance of the evidence defendant's conduct was, (1) cruel and inhuman, and (2) her life was thereby endangered. Section 598.8, Code, 1966; Rule 344(f) (5), (6), R.C.P.; Elliott v. Elliott, 259 Iowa 1286, 147 N.W.2d 907, 909; and Clough v. Clough, 248 Iowa 1090, 1092, 84 N.W.2d 16. See also 15 Drake L.Rev. 126.

■ Of course, cruel and inhuman treatment may be administered though there is no physical mistreatment. And life may be endangered by conduct of one spouse which impairs health of the other. If the danger is such as to be reasonably apprehended, then danger to life is disclosed. McMurray v. McMurray, supra, loc.cit., 256 Iowa 99–100, 126 N.W.2d 336.

■ However, as we said in Cooper v. Cooper, 243 Iowa 561, 564, 52 N.W.2d 517: "Every act of a husband indicating some absence of kindness and tenderness toward his wife is not to be called inhuman treatment. Divorces are not to be granted because of conduct on the part of one spouse that is irritating to the other. The character of the treatment must have some mark of cruelty before it measures up to the definition of inhuman." See also Elliott v. Elliott, supra, and citations.

■ III. In determining whether plaintiff's life was endangered by defendant's conduct, we consider the entire record of their married life, not separate incidents alone. Elliott v. Elliott, supra.

■ IV. Although a cross-petitioner, not having appealed, can not receive a more favorable ruling than that accorded him by trial court, he may call our attention to errors of which he makes complaint and argue them on appeal by the adverse party. Jewett v. Jewett, 252 Iowa 883, 885, 109 N.W.2d 36.

V. These parties were married May 2, 1952. It was plaintiff's third marriage, defendant's first. Two children were born to them; Patricia 11 and Jay 8, at time of trial.

Plaintiff had one son by a prior marriage. He lived with his mother and defendant for

some time but left their home about three years prior to trial of the case at hand.

For convenience plaintiff and defendant will sometimes hereafter be referred to respectively as June and Delmar.

Twice prior to filing of petition in the instant case plaintiff left Delmar, each time initiating divorce proceedings. On both occasions there was a reconcilation an dismissal of the action.

June's testimony reveals Delmar, a few times in 1954 and 1955, shook and once struck her in the mouth. She says these isolated and time removed acts frightened her.

Delmar explains his wife is highly nervous, once had a mastoid operation, that at times thereafter she became hysterical, and the shakings then occurred in order to calm her. Except as above stated it appears there have been no other such occurrences.

Defendant once operated a truck stop business but encountered financial difficulties resulting in bankruptcy. This is at least incidentally related to a matter we shall later discuss.

June contends Delmar's mother was too close, constantly involved herself in their affairs, and always sided with Delmar. She also helped them financially. June says closeness of the mother-in-law bothered her. With regard to this subject the record is replete with charges and countercharges which need not be here considered. They merely reveal repeated two-way in-law irritations.

It appears plaintiff is very religious. She says defendant possesses a bad temper and when angry used profane language to the point of vulgarity in the presence of herself, the children, and her mother. But the record does not disclose such profanity was ever directed at any of them.

Ronald Schutt, June's son by a prior marriage, said Delmar's use of profanity had a "visible effect" on his mother, making her more nervous than it would a normal person. However, June concedes her mother is not averse to use of language which attains the status of profanity. In fact undisputed testimony discloses June's mother at times employed language equal in every respect to that alleged to have been used by Delmar. It would thus appear June and profanity were not complete strangers. Defendant concedes he occasionally voiced strong language, but denies ever giving expression to vulgarity in the presence of plaintiff, her mother or the children.

There is also evidence to the effect Delmar read trashy books and at times had sexy cards and pencils in his possession. He says June complained about the books he read, including "Gone With the Wind", but there was never any reading material in the house he would not show their minister. Delmar admits having kept such cards and pencils for sale when he operated the truck stop, now and then carrying some on his person.

On one occasion, time undisclosed, when June could not get leave from work to attend the funeral of Delmar's uncle he became angry, went to the bathroom and got a shot gun, stating he was going to shoot himself and June. This is denied by defendant. Nothing more appears in connection with this uncorroborated incident.

June says Delmar was jealous, and at various times claimed she was in love with someone else. In this respect it does not appear Delmar ever accused her of unchastity, his statements being directed to the matter of affairs, association or infatuation with other men. As revealed infra, his suspicions in this regard appear to have been warranted.

In answer to leading questions by her attorney June said Delmar made excessive

sexual demands and this upset her. Actually the complaint made goes more to the matter of claimed perversion which need not here be discussed in detail. She could not remember any specific time or times when such an incident occurred. Furthermore, the accusation made is vigorously denied by Delmar, and finds no vestige of corroboration in the record. With regard to the matter of supportive evidence on this subject see section 598.7, Code, 1966; Britven v. Britven, 259 Iowa 650, 145 N.W.2d 450, 453; Cimijotti v. Cimijotti, 255 Iowa 77, 80–81, 121 N.W.2d 537; Veeder v. Veeder, 189 Iowa 912, 913, 179 N.W. 136; Nelson on Divorce and Annulment, Second Ed., section 26.14; and Annos. 15 A.L.R.2d 170, 195.

VI. As heretofore indicated there is another side of the coin.

June discussed her marital problems with Mr. and Mrs. Brammer, Carrie Weiersheuser and Robert Riley.

The party last named lives in What Cheer. He is an employee of the tax commission and repeatedly appeared at the Pardie residence, always during Delmar's absence, ostensibly to collect taxes owing by the latter as a result of the previously mentioned financial difficulties attendant upon operation of the truck stop. June admits having secured $75 from Riley with which to commence the subject divorce action. In the face of this fact it is rather peculiar she refused to accept support money from Delmar after the last separation, stating: "I didn't take it because I didn't know whether I should or not."

Both June and Delmar had consulted their minister, Reverend T. Ray Crews, regarding family problems. He conferred with them as their pastor. Despite a privileged communication objection, properly asserted, this clergyman was permitted to testify regarding statements made to him by June. We are satisfied this evidence should not have been admitted. See section 622.10, Code, 1966; Reutkemeier v. Nolte, 179 Iowa 342, 344–345, 161 N.W. 290, L.R.A.1917D, 273; Cimijotti v. Paulsen, D.C., 219 F.Supp. 621, 623–624; and Annos. 22 A.L.R.2d 1152.

The challenged testimony by Reverend Crews will be by us completely disregarded.

Defendant states, sometime in August 1966, plaintiff said she did not love him, was interested in Riley and told about their amorous conduct.

Admissibility of evidence by others to whom June talked, as aforesaid, is not assailed.

Merlyn Brammer, June's employer, Mrs. Brammer, and Carrie Weiersheuser, disinterested witnesses, each testified to the effect that sometime in the summer of 1966 June told them, individually, her marriage was not a happy one, expressed interest in another man with whom she was in love, and spoke of his promise to provide a better life for her and the children. There were several such conversations with Mr. Brammer. He advised termination of association with the other person would probably result in less fault finding on her part with regard to Delmar and lead to a happier marriage. Mrs. Brammer and Carrie Weiersheuser urged that June make every effort to maintain the existing marriage.

Plaintiff admits having talked to these people about her domestic affairs but denies making statements to them relative to being in love with another man. She says this other person, Robert Riley, when told of her marital difficulties, proved to be a good listener and she loved everything about him, he being about the nicest individual she had ever known.

It must be conceded the situation disclosed above detracts in some degree from the force and effect of June's complaints regarding Delmar's conduct.

VII. As heretofore revealed it was incumbent upon plaintiff to establish by a preponderance of the evidence inhuman treatment *and* danger to life, in order to qualify for relief prayed.

We are persuaded this second element is not here established by the requisite degree of proof.

Although June may be a religious person it is not disclosed she was so sensitive Delmar's language ever served to endanger her life. In fact there is no showing of resultant health impairment.

To be frightened or upset does not alone establish hazard to health or life.

Furthermore there is not a scintilla of evidence disclosing that as a result of defendant's conduct, in whole or in part, plaintiff ever suffered any such ill effects, mental or physical, as are commonly indicative of danger to health or life. In that regard there is more than a modicum of evidence indicating any emotional problems encountered by plaintiff were self-induced, more imaginary than real.

VIII. Our review of the entire record leads us to conclude plaintiff failed to establish inhuman treatment on the part of defendant which endangered her life.

Upon that basis we approve the judgment entered by trial court.

The following cases lend ample support to the foregoing conclusion. Elliott v. Elliott, 259 Iowa 1286, 147 N.W.2d 907; Jones v. Jones, 255 Iowa 103, 121 N.W.2d 668; Jewett v. Jewett, 252 Iowa 883, 109 N.W.2d 36; Clough v. Clough, 248 Iowa 1090, 84 N.W.2d 16; Bowles v. Bowles, 248 Iowa 930, 81 N.W.2d 15; Cooper v. Cooper, 243 Iowa 561, 52 N.W.2d 517; and Siverson v. Siverson, 217 Iowa 1167, 251 N.W. 653.

This being dispositive of plaintiff's appeal, there is no need to pursue other propositions here asserted by her.

Affirmed.

All Justices concur.