**Jane DOE et al., Plaintiffs,**

v.

**Richard TURNER, Attorney General of the State of Iowa, and Ray Fenton, County Attorney in and for Polk County, Iowa, Defendants.**

Civ. No. 73-57-2.

United States District Court,
S. D. Iowa, C. D.

Aug. 3, 1973.

Gordon E. Allen, Iowa Civil Liberties Union, Des Moines, Iowa, for plaintiffs.

Richard E. Haesemeyer, Sol. Gen., George W. Murray, Sp. Asst. Atty. Gen., Ray A. Fenton, Polk County Atty., Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION

Before LAY, Circuit Judge, and STUART and HANSON, District Judges.

HANSON, District Judge.

This action comes before this Court upon a Complaint challenging the Iowa abortion law, which Complaint appears to be based upon the recent United States Supreme Court decisions in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and the rationale supporting the above decisions. The plaintiffs pray for a declaratory judgment that Chapter 701, Code of Iowa, 1973, is in violation of the rights of the plaintiffs as protected by the Constitution of the United States, and as such, is void and of no effect. The plaintiffs pray also for the Court to enter a permanent injunction restraining the defendants, their officers, agents, servants, and employees from threatening to prosecute, prosecuting or otherwise enforcing the challenged statute.

Jane Doe instituted this action on her own behalf and others similarly situated, alleging her own pregnancy, and her attempt to procure a legal, medically safe abortion within the State of Iowa. She alleges that she has been advised by attending physicians that absent a clear statement as to the viability of Iowa's abortion law in reference to the above cited cases and holdings, that such physicians could not perform such an operation upon them without fear of prosecution by the defendants, and the attendant notoriety that such would produce. Plaintiff Roe, an indigent, alleges basically the same facts, and both plaintiffs allege that they will be forced to travel out of the State of Iowa to obtain the necessary operation in a medically safe atmosphere.

Plaintiff physicians, suing on their own behalf and others similarly situated, allege that the existence and threatened enforcement of the challenged statute, and the attendant vagueness of the status of said statute, has a chilling effect on the exercise of their physician-patient relationship, and precludes them from exercising their sound medical discretion.

The Court finds that the plaintiffs have been adversely affected by the existence and possible enforcement of Chapter 701 of the 1973 Code of Iowa and thus have standing to bring this cause of action. The Court also

finds this case presents a justiciable case or controversy. Roe v. Wade, *supra*; Doe v. Bolton, *supra*.

■ The Court also deems this to be an appropriate class action under Rule 23 of the Federal Rules of Civil Procedure.

Jurisdiction of the Court is invoked pursuant to Title 28 U.S.C., Sections 1331, 1343, 2201, 2202, 2281 and 2284 and Title 42 U.S.C., Section 1983.

## CONCLUSIONS OF LAW

■ The Complaint appears to present similar issues to those considered by the United States Supreme Court in Roe v. Wade, *supra*. The plaintiffs claim that the challenged statute improperly invades a right alleged to be possessed by a pregnant woman, to choose to terminate her own pregnancy. This argument is couched in terms of due process, equal protection, and the right to privacy. Justice Blackmun thoroughly discussed these issues in Roe v. Wade and Doe v. Bolton and established the holdings in these cases on the right to privacy in a physician-patient relationship and the Due Process Clause of the Fourteenth Amendment.

Because of the similarities in the Texas statute which was held unconstitutional in Roe v. Wade and the challenged Iowa statute and because of the similarity in the constitutional attack lodged against the Iowa statute, it is incumbent upon this Court to determine if there is any basis upon which this Court could reach a different result than that reached by the United States Supreme Court in Roe v. Wade.

Article 1191 of the Texas statute provided:

"If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor more than five years; . . ."

Article 1196 of the Texas statutes provides one exception to the general prohibition against the performance of abortions:

"Nothing in this chapter applies to an abortion procured or attempted by medical advice for the purpose of saving the life of the mother."

Chapter 701.1 of the Code of Iowa, 1973 provides:

"Administration of drugs—use of instruments. If any person, with intent to produce the miscarriage of any woman, willfully administer to her any drug or substance whatever, or, with such intent, use any instrument or other means whatever, unless such miscarriage shall be necessary to save her life, he shall be imprisoned in the penitentiary for a term not exceeding five years, and be fined in a sum not exceeding one thousand dollars."

Although the language in these two statutes is different in some respects, the substance of the statutes is identical. Both statutes proscribe the use of any drugs, instruments or other means to produce an abortion or miscarriage. Both statutes contain identical exceptions to this prohibition, to-wit: to save the *life* of the mother.

Roe v. Wade sets out how a state may restrict the performance of an abortion:

"1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a *life saving* procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability the State, in promoting its interest in the potentiality of human life, may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.

2. The State may define the term 'physician,' as it has been employed in the preceding numbered paragraphs of this Part XI of this opinion, to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined."

The Iowa statute on its face is identical in substance to the Texas statute struck down by the United States Supreme Court and it would appear that this Court is compelled to reach the same conclusion, that Chapter 701 of the Iowa Code, 1973 is unconstitutional and as a unit must fall.

The defendants attempt to avoid this result by arguing that Iowa's law is severable and that the Iowa courts would by judicial interpretation broaden the single exception to Iowa's law, that abortions may be performed when necessary to save the mother's life. The defendants allege that the above exception under the broadened interpretation would also allow abortions to be performed to preserve the mother's health. As support for their position the defendants cite Burlingame v. Burlingame, 260 Iowa 18, 148 N.W.2d 493 (1967). In this case the Iowa Supreme Court was interpreting the former Iowa divorce law which proscribed divorce except under limited circumstances, one of which was where two elements are proven "(1)

inhuman treatment and (2) danger to life therefrom." Burlingame v. Burlingame, *supra*, 148 N.W.2d at 494. It was held that a showing of "danger to health" could establish that a spouse's life was endangered. The defendants argue that this broad interpretation of "danger to life" under the former divorce law would be extended to prosecutions under the abortion statutes.

If the Iowa abortion statute is severable and if the statute is interpreted to allow abortions to preserve the life or *health* of the mother, the defendants argue that the Iowa statute would be valid under the United States Supreme Court guidelines as it relates to the third trimester.[1]

This Court cannot agree that Iowa's statute can be distinguished from the Texas statute on the basis that Iowa's statute would be broadly interpreted to include "health" within the term "life" and on the basis that Iowa's statute is severable. The *Burlingame* divorce situation involved many different considerations than would be involved in interpreting the *criminal* abortion statute and does not conclusively show that Iowa includes "health" within the meaning of "life" for purposes of enforcing the abortion statute. In any event, the Court in *Burlingame* broadened the interpretation of "life" by saying that danger to health may endanger life:

"We have frequently held life may be endangered by impairment of Health." Burlingame v. Burlingame, *supra* at 494.

This interpretation of "life" to include "health" still sweeps too broadly under the Supreme Court guidelines in that it draws the link between health and life by saying endangered health must endanger life. Roe v. Wade holds that a state can proscribe abortions in the third trimester, "except where it is necessary, in appropriate medical judgment, for the preservation of the life or health

---

1. The defendants do not contest that Iowa's statute is unconstitutional as it relates to proscription of abortions in the first two trimesters under Roe v. Wade.

of the mother." No showing needs to be made that the preservation of the health of the mother is related to preservation of her life. Therefore, even if Iowa's interpretation of "life" in the old divorce law was extended to the interpretation of "life" in the abortion statute, it would be more restrictive than the Roe v. Wade guidelines and the abortion statute would be invalid.

■ The Court also cannot agree that the Iowa abortion statute is severable under the circumstances at hand, although the defendants have argued forcefully that it is. There is no single portion of the wording of the Iowa statute that can simply be deleted nor can the interpretation of the statute be slightly changed to enable it to meet the Roe v. Wade standards. In order to "sever" the Iowa statute, as defendants request, it would have to be completely reconstructed judicially. This is a task which confronts the Iowa General Assembly if they desire to restrict the performance of abortions in Iowa, and not the judiciary. The defendants are correct in pointing out that courts will uphold the constitutionality of a statute when possible by construing it in a constitutional manner.

> "While it is true, generally speaking, that a criminal statute is to be strictly construed, and that, under the rules of statutory construction, the valid portion of the legislation will not be enforced unless it can be separated from the invalid, yet, when the legal can be distinguished from the illegal, the statute will be upheld. That is true even though the statute is penal in its nature; for a statute, although penal, under proper circumstances may be so construed that the valid parts are retained and the invalid rejected. Much depends upon the circumstances and conditions." State v. Bevins, 210

Iowa 1031, 230 N.W. 865, 868 (1930). See also Long v. The Board of Supervisors of Benton County, 258 Iowa 1278, 142 N.W.2d 378 (1966).

This Court, however, cannot invade the province of the Legislature and redraft this statute to the extent that would be required to meet the guidelines of the United States Supreme Court in Roe v. Wade. There is no ready way "the legal can be distinguished from the illegal." State v. Bevins, *supra*, 230 N.W. at 868.

Therefore, in measuring Chapter 701 of the Iowa Code, 1973 against the standards set out in Roe v. Wade, this Court concludes that the Iowa statute sweeps too broadly in restricting legal abortions to those "necessary to save her (mother's) life." The statute makes no distinction between abortions performed early in pregnancy and those performed later, and it limits to a single reason, "saving" the mother's life, the legal justification for the procedure. The statute, therefore, cannot survive the constitutional attack made upon it here.

■ While this Court has granted the declaratory relief requested by the plaintiffs, consistent with principles outlined in several Federal cases, among them Zwickler v. Koota, 389 U.S. 241, 252–255, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) and Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the prayer for injunctive relief of the plaintiffs is denied. As stated in Roe v. Wade different considerations enter into a decision to grant declaratory relief than injunctive relief. This Court as the Supreme Court in Roe v. Wade will assume that the prosecutorial authorities in Iowa will give full credence to this decision and its holding that the Iowa abortion statute is unconstitutional and of no force and effect.