George W. NYBERG et al.,
Plaintiffs-Appellees,

v.

The CITY OF VIRGINIA et al.,
Defendants-Appellants.

No. 73–1686.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1973.

Decided Feb. 19, 1974.

Rehearing and Rehearing En Banc
Denied June 3, 1974.

which is not necessary to preserve the life of the mother. Because we find that the resolution unduly restricts what the United States Supreme Court has held to be a fundamental right, we are compelled to hold the resolution unconstitutional. We therefore affirm.

The Virginia Municipal Hospital is a public hospital operated by the City of Virginia, Minnesota through a hospital Commission. The Commission adopted Resolution 2606 on February 5, 1973 and reaffirmed the resolution on February 19, 1973.[1]

Appellants sought relief pursuant to 28 U.S.C. §§ 1331, 1343 and the Civil Right Acts, 42 U.S.C. §§ 1981, 1983, and 1985 claiming that the resolution was an encroachment of their constitutionally guaranteed rights.

The District Court dismissed the Nybergs, the Arpis, Melodie Wilson and James E. Williams, leaving the two physicians, Doctors Mock and Tietz with standing to bring the action. The City of Virginia was dismissed as a party defendant by the court.

Resolution No. 2606 was declared by the court to be null and void and further:

> Defendants are permanently enjoined from attempting to enforce Resolution No. 2606 or any similar resolution or regulation and are required and mandated to make the Virginia Municipal Hospital facilities available to any duly licensed physician within a period of 30 days from date hereof for the performance of female abortions within and subject to the rules and principles stated in Roe v. Wade, 410 U.S. 153 [113] at p. 164 [93 S.Ct. 705, 35 L.Ed.2d 147] (1973).[2]

The members of the hospital commission and the hospital administrator appeal.

O. C. Adamson, II, Minneapolis, Minn., for defendants-appellants.

Newton S. Friedman, Duluth, Minn., for plaintiffs-appellees.

Before BRIGHT and STEPHENSON, Circuit Judges, and STUART, District Judge.*

STEPHENSON, Circuit Judge.

The single issue to be decided in this case is the constitutionality of a resolution adopted by the municipal hospital at Virginia, Minnesota. The resolution prohibits the use of hospital facilities for the performing of any abortion

---

* W. C. STUART, District Judge, Southern District of Iowa, sitting by designation.

1. The text of Resolution No. 2606 is not a part of the record. The parties agree, however, that the thrust of the enactment is to proscribe the performance of abortions at the Virginia Municipal Hospital except when necessary to save the life of the mother.

2. The court's memorandum in support of its order is reported at 361 F.Supp. 932 (D. Minn.1973).

■ Appellants initially contend that the appellee-doctors have no standing to bring this action. Standing, of course, entails

> such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

We think that the Supreme Court in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) has clearly paved the way for physicians to assert their constitutional rights to practice medicine, which now includes the right to advise and perform abortions. Justice Blackmun writing for the Court in Roe v. Wade, *supra* at 163, of 410 U.S. at 732 of 93 S.Ct. stated:

> [F]or the period of pregnancy prior to this "compelling" point, the attending physician, in consultation with his patient, is free to determine, without regulation by the State, that, in his medical judgment, the patient's pregnancy should be terminated. If that decision is reached, the judgment may be effectuated by an abortion free of interference by the State.

The opinion states further at 165, 93 S.Ct. at 733:

> [This] decision vindicates the right of the physician to administer medical treatment according to his professional judgment up to the points where important state interests provide compelling justifications for intervention. Up to those points, the abortion decision in all its aspects is inherently, and primarily, a medical decision, and basic responsibility for it must rest with the physician.

The impact of the court's discussion cannot be fairly said to limit standing to sue in abortion cases to pregnant women. Neither can these opinions be read so narrowly as to accord standing only to a physician threatened with criminal prosecution. *See* Doe v. Bolton, *supra* at 188–189 of 410 U.S., 93 S.Ct. 739. Clearly the claims of medical doctors to "freely practice medicine according to the highest medical standards without arbitrary outside restraints" are inextricably bound up with the privacy rights of women who seek abortions. YWCA v. Kugler, 342 F.Supp. 1048, 1055 (D.N.J.1972). This is sufficient to present a justiciable controversy and confer standing on the physicians who bring this action. *See* Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Abele v. Markle, 452 F.2d 1121, 1125 (CA2 1971); stay granted, 409 U.S. 908, 93 S.Ct. 212, 34 L.Ed.2d 169 (1972), remanded for consideration in light of Roe and Doe, 410 U.S. 951, 93 S.Ct. 1417, 35 L.Ed.2d 683 (1973); Doe v. Turner, 361 F.Supp. 1288, 1289 (D.Iowa 1973) (3 judge court); Freeman & Bass, P. A. v. State of N. J. Com'n of Invest., 359 F.Supp. 1053, 1059 (D.N.J.1973); *cf.* O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Furthermore, the practical effect of the stringent limitation on the use of hospital facilities for performing abortions is to arbitrarily bar the physicians from activities that directly affect their economic interests. Abele v. Markle, *supra,* 452 F.2d at 1125; *see also,* Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

Turning to the merits, we find the focal point to be whether a public hospital can deny its facilities to doctors and their patients who seek abortions, using the same basic language that the Supreme Court has held to be unconstitutional in statutes providing criminal penalties.

■ The language of Roe v. Wade and Doe v. Bolton expressed the plain view that the abortion decision and its implementation is a fundamental right of personal liberty embraced within the

Due Process Clause of the Fourteenth Amendment and is thereby protected from undue infringement by the State.[3] In other words, absent compelling circumstances of state interest, regulation of "certain fundamental rights," including abortion, is unconstitutional. Roe v. Wade, *supra* at 155 of 410 U.S., 93 S.Ct. 705, 708 and citations.

The "compelling point"[4] was set out in a tripart test by the Supreme Court in Roe v. Wade. The district court quoted the test and we quote it again here:

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment for the preservation of the life or health of the mother.

While the *Roe* and *Doe* decisions dealt with state statutes providing criminal penalties, those decisions cannot be read so narrowly. As the several noncriminal cases cited by the court in Roe v. Wade point out, the issue is the existence of certain fundamental rights. If any of the defined fundamental rights is found to be present the state must then show "compelling state interest" if it wishes to limit or regulate. Roe v. Wade, *supra* at 155–156, 93 S.Ct. 705 and citations; Roe v. Wade, *supra* at 211, 93 S.Ct. 705 (Mr. Justice Douglas concurring);

Hathaway v. Worcester City Hospital, 475 F.2d 701, 705 (CA1 1973) & n. 2.

■ We find—as have several courts before us, including the district court in the instant case—that a plain reading of the *Roe* and *Doe* decisions can lead to only one conclusion: Where the state fails to take cognizance of the separate trimesters of pregnancy in its regulation of abortion procedures, the regulation is overbroad and invalid. Doe v. Bolton, *supra* at 195 of 410 U.S., 93 S.Ct. 739; Roe v. Wade, *supra* at 163 of 410 U.S., 93 S.Ct. 705; Roe v. Wade, *supra* at 218, 93 S.Ct. 705 (Mr. Justice Douglas concurring); Nyberg v. City of Virginia, *supra* at 939 of 361 F.Supp.; Doe v. Woodahl, 360 F.Supp. 20 (D.C.1973); Doe v. Israel, 482 F.2d 156, 159 (CA1 1973); *cf.* Hathaway v. Worcester City Hospital, *supra* at 706 of 475 F.2d.

Appellant frames the issue to be whether the state has an affirmative duty under *Roe* and *Doe* to provide abortion facilities. This record does not present a situation where the hospital would be required to establish new or different facilities and staff in order to perform the operations. For reasons set out below, we find that the district court in this case was correct in ordering the Virginia Municipal Hospital to make its existing facilities available for the performing of abortions.

The First Circuit Court of Appeals stated in Hathaway v. Worcester City Hospital:

But it seems clear, after *Roe* and *Doe*, that a fundamental interest is involved, requiring a compelling rationale to justify permitting some hospital surgical procedures and banning another involving no greater risk or demand on staff and facilities.

\* \* \* \* \* \*

[I]t is clear under *Roe* and *Doe* that a complete ban on a surgical procedure relating to the fundamental interest in

---

3. The record supports the trial court's determination that there is state involvement here constituting "state action" for 42 U.S.

C. § 1983 purposes. The parties do not contest the fact.

4. Roe v. Wade, *supra* at 163, 93 S.Ct. at 742.

the pregnancy decision is far too broad when other comparable surgical procedures are performed. 475 F.2d 701, 705–706.

The court concluded:

> [O]nce the state has undertaken to provide general short-term hospital care, as here, it may not constitutionally draw the line at medically indistinguishable surgical procedures that impinge on fundamental rights. 475 F.2d 701, 706.

The trial court here, as did the First Circuit in *Hathaway*, felt required to hold that an outright ban on nontherapeutic abortions (Hathaway dealt with a municipal hospital's ban on sterilization operations) was unconstitutional under the teachings of *Doe* and *Roe*. We agree.

■ The record in this case demonstrates no compelling circumstances which would mandate this hospital's abortion restricting rules. Nothing on this record indicates that the performance of abortions will interfere with the normal hospital routine or require further staff and facilities. The ban on all abortions other than those to. save the mother's life serves neither the hospital nor the state. Doe v. Bolton, *supra* at 198 of 410 U.S., 93 S.Ct. 739.

■ The trial court observed and we reiterate and adopt as our view, guided by the Supreme Court decisions in *Roe* and *Doe:* The administrators of the Virginia, Minnesota municipal hospital may not arbitrarily preclude abortions from the variety of services offered which require no greater expenditure of available facilities and skills. 361 F. Supp. 932, 938.

*See also* Doe v. Bellin Memorial Hospital, 479 F.2d 756, 759 (CA7 1973); Klein v. Nassau County Medical Center, D.C., 347 F.Supp. 496, 500 (1972), remanded for consideration in light of Doe and Roe, 412 U.S. 924, 93 S.Ct. 2747, 2748, 37 L.Ed.2d 151 (1973).

The abortion decision and its effectuation is left by the Court to the patient and her attending physician.[5] In the second and third trimesters of pregnancy the state may regulate abortions so long as the regulation is fashioned to accommodate the conflicting rights of pregnant women and the interests of the state. The sweeping hospital resolution in question here cannot withstand the constitutional parameters framed by *Doe* and *Roe*. It would be a nonsequitur to say that the abortion decision and its effectuation is an election to be made by the physician and his patient without interference by the state and then allow the state, through its public hospitals, to effectively bar the physician from using state facilities to perform the operation.

Appellant contends that because the Supreme Court in Doe v. Bolton did not strike down a provision of the Georgia statute which left a hospital free to deny admission to patients seeking abortions we must reach that same result here. The reading of *Doe* and *Roe* together, as the court instructs that the opinions should be read, does not allow that result. The impact of *Doe* and *Roe* is to defined yet another fundamental right secured by the Constitution which may not be infringed under color of any state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. We are not dealing here with the denominational hospital[6] or the religious or moral

---

5. Contrary to the view taken by appellant, *Roe* and *Doe* do not suggest and no hospital need provide facilities for an abortion merely upon a mother's demand. Conversely, the court said:

> Roe v. Wade, *ante*, sets forth our conclusion that a pregnant woman does not have an absolute constitutional right to an abortion on her demand. Doe v. Bolton,

*supra* at 189 of 410 U.S., at 746 of 93 S. Ct.
*See also* Roe and Doe, *supra* at 208 (Mr. Chief Justice Burger concurring).

6. The Supreme Court had this to say regarding the Georgia statutes provisions:

> These provisions obviously are in the statute in order to afford appropriate protec-

convictions of any individual. Instead, we deal with unnecessary restrictive rules imposed by a state facility upon a constitutionally protected choice.

▮▮ For the reasons set out above, while we propose to fashion no specific procedures which must be followed nor to require any individual staff members to participate in abortion procedures, we do hold that the hospital facilities must be made available for abortion services, as they are for other medical procedures, to those physicians and their patients who have a right to and request such facilities.

Affirmed.

On Petition for Rehearing.

HEANEY, Circuit Judge, joined by GIBSON, Circuit Judge (dissenting from denial of the petition for rehearing en banc.

We would grant the petition for rehearing en banc. Two questions deserve more thorough consideration: (1) Do staff physicians of a public hospital have standing to maintain an action against that hospital to require it to permit non-therapeutic abortions in the hospital; and (2) do Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), require that every public hospital make its facilities available for non-therapeutic abortions.

## STANDING

The District Court gave the physicians standing on two grounds:

(1) They have a right to practice medicine according to the highest medical standards without arbitrary restraints—a right inextricably bound up with the private rights of a woman seeking an abortion.

(2) They cannot be arbitrarily deprived of an opportunity to perform abortions which may account for a portion of their livelihood.

This Court adopted the trial court's reasoning. It held that the physicians had standing on both of the grounds set forth by the District Court. With respect to ground (1), this Court went further than other courts [1] in granting standing to physicians who failed to allege or prove that they had patients who desired to have abortions performed.

The Supreme Court stated in *Roe* that a childless married couple lacked standing because:

\* \* \* their alleged injury rests on possible future contraceptive failure, possible future pregnancy, possible future unpreparedness for parenthood, and possible future impairment of health. \* \* \*

Roe v. Wade, *supra* at 128.

Dr. Mock and Dr. Tietz appear to be in substantially the same position as the childless couple in *Roe*. Their injury, if any, appears to rest on their acquiring patients in the future who may wish to have abortions performed in the municipal hospital. We are reluctant to extend *Roe* and give standing to these physicians without a more thorough consideration of the implications of that extension.

---

tion to the individual and to the denominational hospital. Doe v. Bolton, *supra* at 198, 93 S.Ct. at 750.
*See* Doe v. Bellin Memorial Hosp., 479 F.2d 756 (CA7 1973).

1. In Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the physicians alleged that they were regularly consulted by pregnant women desiring abortions. In Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the physician involved had given birth control ad-

vice to married persons and was convicted for doing so. In Abele v. Markle, 452 F.2d 1121 (2nd Cir. 1971), the physicians alleged that they had pregnant patients who in their medical judgment should have abortions. In Young Women's Christian Ass'n of Princeton, N.J. v. Kugler, 342 F.Supp. 1048 (D.N.J. 1972) (3-judge court), the physicians alleged they were forced to turn away patients interested in abortions. In Doe v. Turner, 361 F.Supp. 1288 (S.D.Iowa 1973) (3-judge court), the physicians alleged that they had pregnant patients who wanted abortions.

With respect to ground (2), Dr. Mock simply alleged and proved that he was a practicing physician on the staff of the Virginia Municipal Hospital, and Dr. Tietz simply alleged and proved that he was a gynecologist on the staff of the Virginia Municipal Hospital. Neither physician alleged nor proved that his economic interest would be adversely affected by the hospital policy. The trial court recognized that fact in its findings when it stated that the hospital could not deprive the physicians of an opportunity to "perform abortions which *may* account for a portion of their livelihoods." 361 F.Supp. 932, 936 (D. Minn.1973) (Emphasis added.). It, nonetheless, found that the potential economic injury was sufficient to give standing.

This Court, perhaps realizing the difficulty of granting standing on such a tenuous ground, found that the physicians' economic interests were in fact directly affected. It stated:

\* \* \* the practical effect of the stringent limitation on the use of hospital facilities for performing abortions is to arbitrarily bar the physicians from activities that directly affect their economic interests. \* \* \*

George W. Nyberg et al. v. The City of Virginia et al., 495 F.2d 1342, p. 1344 (8th Cir. 1974).

We would have no quarrel with extending standing to physicians who allege or prove that their economic interests has been or will be directly affected. We do question the extension of standing to physicians who fail to allege or prove that their economic interests have been or will be directly affected. *Cf.,* Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

### MERITS

This Court appears to hold that all public hospitals with adequate facilities must permit qualified staff members to perform abortions in such hospitals. They seem to assume that *Doe* and *Roe* require this result. We find no such compulsion in those decisions and are reluctant to extend their holdings without more careful consideration.

*Doe* and *Roe* are primarily concerned with protecting the right of a pregnant woman to have an abortion. If that right can be reasonably protected without compelling every public clinic and hospital in the United States to perform the procedure, consideration should be given to doing so. An inquiry should perhaps be made into the question of whether the order is reasonably necessary to protect the constitutional rights of pregnant women. Central to such an inquiry would be the cost and availability of alternate facilities, the effect on the staff and routine of the hospital being asked to perform the procedure, and whether public assistance is available to assist the person in having the abortion performed at another public or private facility willing to undertake the procedure.

In Minnesota, for example, many public and private clinics and hospitals perform abortions in accordance with the decisions in *Doe* and *Roe*. It may be, therefore, that the rights of those desiring abortions who live in the Virginia area are not significantly dampened by the policy of the municipal hospital in that community. We believe that a decent regard for the deep-seated convictions of those in the community who favor abortions, as well as those who oppose abortions, can be recognized by determining whether the rights of pregnant women desiring abortions can be reasonably protected without requiring the municipal hospital to perform abortions against its will. At least, the full Court should consider the alternative before a far-reaching precedent is established.