## Abortion and Sterilization

KANE, Attorney General, May 12, 1975.— You have asked this department to review as to legality "Chapter 51, Proposed Regulations on Discrimination With Respect to Abortion and Sterilization." It is our opinion and you are advised that sections 51.31-33 implement section 5.2 of the Pennsylvania Human Relations Act of October 27, 1955, P. L. 741, as amended, 43 PS §951, et seq. (the "Act"), in a manner that is contrary to the United States Constitution. The unconstitutional aspect of the regulations is that they would allow public hospitals to adopt a "stated ethical policy" that their facilities are not available to doctors to perform abortions or sterilizations.[1]

---

[1] Section 51.41 of the proposed regulations must also be somewhat modified as will be discussed infra.

Section 5.2 of the Act reads, in relevant part:

"No hospital or other health care facility shall be required to, or be held liable for refusal to, perform or permit the performance of abortion or sterilization contrary to its stated ethical policy."

Sections 51.31-33 of the proposed regulations would apply this language without distinguishing between public and private hospitals.

As is well known, the United States Supreme Court ruled in Roe v. Wade, 410 U.S. 113 (1973), that:

"(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

"(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

"(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." Id. at pages 164-65.

Thus, the Supreme Court greatly restricted the ability of States to interfere with a woman's abortion decision. A State may no more do so in the hospitals it controls than in its criminal statutes. This is made explicit by the companion case of Doe v. Bolton, 410 U.S. 179 (1973). That case dealt with a Georgia abortion statute and specifically with a section thereof *substantially identical with section 5.2* of the Pennsylvania Act. The court allowed to stand section 12-1202(e) of the Georgia abortion statute which reads, in relevant part:

"Nothing in this section shall require a hospital to admit any patient for the purpose of performing an abortion.": Id. at page 205.

However, the court specifically limited the impact of this section, stating:

"These provisions obviously are in the statute in order to afford appropriate protection. . . . to the denominational hospital.": Id. at page 198.

The court's clear import was that a statute (such as Pennsylvania's) allowing hospitals not to perform abortions would violate the abortion right if it applied to public hospitals. Because Roe and Doe are meant to be read together, Roe v. Wade, supra, at page 165, it is clear that a State or lesser governmental unit may not proscribe doctors from using its hospital facilities for abortions (except elective abortions after viability, which is defined by the court at 24-28 weeks: Id. at page 160). As noted above, however, the abortion procedure may be regulated in the public hospital facility in ways that are reasonably related to maternal health after the end of the first trimester.

Federal courts have unanimously interpreted Roe and Doe as requiring public hospitals to make their facilities available to doctors for the performance of "elective" and "therapeutic" abortions: Nyberg v. City of Virginia, 495 F. 2d 1342 (8th Cir., 1974); Orr v. Koefoot, 377 F. Supp. 673 (D. Neb., 1974); Doe v. Poelker, No. 75-1069 (8th Cir., April 14, 1975); Doe v. Hale Hospital, 500 F. 2d 144 (1st Cir., 1974); Doe v. Mundy, 378 F. Supp. 731 (E. D. Wisc., 1974), affirmed per Circuit Rule 28, No. 74-C-224 (7th Cir., January 30, 1975); Santiago v. Colon, Civil No. 74-862 (D.P.R., August 6, 1974). See also Doe v. General Hospital Civil No. 573-70 (D.D.C., consent decree, April 8, 1974). These opinions are based upon the reasoning of Roe v. Wade, supra, that the abortion decision

(except for elective abortions after viability) is a private one between a woman and her doctor, with which the State may not interfere. The same logic applied a fortiori in the sterilization context; a public hospital may not close its facilities to doctors who wish to perform sterilizations: Hathaway v. Worchester City Hospital, 475 F. 2d 701 (1st Cir., 1973), cited in Nyberg v. City of Virginia, supra.

One lower State court ruled contra the position that public hospitals cannot prohibit abortions: Roe v. Arizona Board of Regents, No. 149243 (Superior Court, Pima County, Arizona, February 6, 1975). That decision was overturned on appeal. The higher court, addressing the precise point in issue here, held:

"As for A.R.S. §36-2151, in view of the foregoing discussion, the first sentence thereof ("No hospital is required to admit any patient for the purpose of performing an abortion.") is overbroad and unconstitutional when applied to public hospitals.": Roe v. Arizona Board of Regents, 2 CA-CIV 1834 (Court of Appeals, Arizona, Division Two, April 21, 1975).

Thus, the state of the law regarding the duty of public hospitals in this area is clear.

Since it is incumbent upon the Human Relations Commission to enforce section 5.2 of the Act so as to give the law a constitutional interpretation, 1 Pa. C.S. §1922(3), it is clear that the commission may not allow public hospitals to prohibit abortions and sterilizations. This may be done by reading the Act to mean that, while hospitals need not permit abortions or sterilizations contrary to their stated ethical policy, public hospitals may not adopt such a policy.

Both the Act and the proposed regulations protect the right of individual medical personnel not to assist in abortions or sterilizations if such procedures are repugnant to them. This protection is not only proper,

but also constitutionally mandated: Doe v. Bolton, supra, at 198. Nevertheless, public hospitals must provide staff who will perform these services. A public hospital:

"[H]as the duty to obtain the services of responsible physicians and other necessary personnel whose personal views on abortion do not prohibit them from providing an abortion. It must also provide the necessary equipment and facilities to accomplish the goal.": Doe v. Poelker, supra at page 11.

Section 51.41 of the proposed regulations, "Supplementary Interpretations Regarding Bona Fide Occupational Qualification Standards" should be rewritten to reflect this duty (not option) of public hospitals.

The above discussion raises the difficult question of defining what is meant by "public hospitals." Certainly, nonproprietary municipal and county hospitals that are community controlled, such as Philadelpha General, are perforce public. So are hospitals controlled by our State-related universities[2] and also the State General Hospitals that are regulated by the Act of June 13, 1967, P. L. 31, art. 3, sec. 321, 62 PS §321, et seq. See Foster v. Mobile County Hospital Board, 398 F.2d 227 (5th Cir., 1968). On the other hand, denominational hospitals are explicitly nonpublic in this context according to the cited language of Doe. v.

---

[2] These universities are Temple University (Isaacs v. Temple, 385 F.Supp. 473, 489 (E.D. Pa., 1974)), the University of Pennsylvania (Rackin v. University of Pa., 386 F.Supp. 992, 1004 (E.D. Pa., 1974)), the University of Pittsburgh (Braden v. University of Pittsburgh, Civil Action No. 71-646 (W.D. Pa., Mar. 13, 1975)), and Pennsylvania State University (a fortiori). Additionally, a medical facility controlled by any State-owned institution of higher learning that performs gynecological surgery may not prohibit its physicians from performing abortions and sterilizations.

Bolton, supra. In the present state of the law, mere receipt by a denominational or other private hospital of Federal funds under the Hill-Burton Act (Hospital Survey and Construction Act), 42 U.S.C.A. §291, et seq., will not make that hospital so public as to compel it to provide abortion facilities: Chrisman v. Sisters of St. Joseph of Peace, No. 72-3087 (9th Cir., Nov. 21, 1974); Doe v. Bellin Memorial Hospital, 479 F.2d 756 (7th Cir., 1973); Taylor v. St. Vincent's Hospital, 369 F.Supp. 948 (D. Mont., 1973); Watkins v. Mercy Medical Center, 364 F.Supp. 799 (D. Id., 1973).

Nevertheless, an otherwise private hospital may be deemed public and subject to constitutional standards if, in addition to receiving Hill-Burton funds, it has other indicia of State action. For instance, a "private" hospital may be imbued with State action if its commission members are appointed by a public body, it receives Hill-Burton funds, and it is the only hospital in the area: Meredith v. Allen County War Memorial Hospital Commission, 397 F.2d 33 (6th Cir. 1968). Other factors imbuing a private hospital with State action include the leasing of facilities from the county for a nominal fee: O'Neill v. Grayson County War Memorial Hospital, 472 F.2d 1140 (6th Cir., 1973). In the absence of such special factors, a private hospital will fall within the provisions of section 5.2 of the Human Relations Act, allowing it to adopt a stated ethical policy that it will not provide abortions or sterilizations.

One important caveat must be added. The constitutional requirement that public hospitals may not prohibit doctors from using their facilities for abortions and sterilizations is not meant to raise these procedures to favored status. The law is simply that if a public medical facility does general surgery, then it must perform abortions and sterilizations. A public

hospital is still free "to make hospital facilities available to persons seeking abortions only on the same terms and subject to the same conditions as those imposed upon other would-be users of the hospital facilities.": Doe v. Hale Hospital, supra, at 147.

We are returning your proposed regulations regarding discrimination with respect to abortion and sterilization, so that the Commission may amend sections 51.31, 51.32, 51.33, and 51.41 in a manner consistent with this opinion. The remaining sections of these regulations are acceptable to this department in their present form.

A copy of this opinion is being forwarded to the Honorable Frank S. Beal, Secretary of Public Welfare, so that he may, in his role of regulating State general hospitals, implement the provisions of this opinion regarding those hospitals.